E. MITCHELL SIMON, Respondent, v. ALLIED CHEMICAL
CORPORATION, Appellant.

First Department, November 24, 1970.

*Irving R. Storch* of counsel (*Herman N. Schwartz,* attorney),
for appellant.

*Sidney A. Florea, Robert S. Field* and *Walter M. Schwartz*
of counsel (*DiFalco, Field, Florea & O'Rourke,* attorneys), for
respondent.

STEVENS, P. J. This is an appeal from an order entered
March 30, 1970 (SCHWEITZER, J.) which denied defendant's
motion for summary judgment.

The issue involves double employment and a claim for com-
missions allegedly resulting therefrom. Plaintiff, a real estate
broker, sues for one half of a commission he claims he would
have earned had the contemplated purchase of property at
40 Rector Street been effected. Plaintiff alleges that he was
employed by Joseph P. Blitz Construction Corp. (Blitz) to
negotiate for the purchase of the property and thereafter, on
behalf of Blitz, made several offers to defendant, the terms
consisting of cash and a purchase-money mortgage. These
offers were not accepted. Plaintiff asserts that on November 21,
1968 he submitted a final offer of a purchase price of $10,000,000,
$7,500,000 cash and a purchase-money mortgage of $2,500,000,
which was rejected also. Allegedly, on December 10, 1968,
plaintiff and his cobrokers met in the office of one Mr. Macchia,
who had represented defendant Allied Chemical Corporation
(Allied) in the negotiations, and at that time Macchia stated
" if you can get $9,800,000 all cash, we have a firm deal."
Plaintiff terms this offer a significant departure from previous
offers submitted by Blitz. Plaintiff communicated with Blitz
who allegedly accepted or approved the figure and plaintiff
and his cobrokers separately submitted written confirmation

of their purchase offer. Plaintiff's letter from Blitz stated, in part, " we will pay the real estate commission. This offer, of course, is subject to a mutually satisfactory contract."

By letter dated December 19, 1968 addressed to Blitz, Macchia, on a letterhead of defendant, acknowledged receipt of the offer and noted " as stated to your agents * * * Allied Management will consider the offer, but is not ready to make any acceptances or rejections until our plans are a little more complete. As you suggested, we will keep your offer open until January. If we are unable to make a decision by that time, we will release you from any obligation toward Allied."

Despite this letter plaintiff asserts he had in the interval been assured by Macchia that the deal would be approved by the executive committee of Allied. Plaintiff claims this was his first knowledge that approval by the executive committee was a prerequisite.

February 6, 1969, Macchia called a meeting at his office at which plaintiff states he, Joseph P. Blitz, Locker (Blitz's partner) and others were present. At that time, according to plaintiff, Macchia stated the executive committee had failed to approve the $9,800,000 offer, but had approved a $10,000,000 contract, $2,000,000 cash on contract and the balance in cash on delivery of title approximately 18 to 24 months later. Defendant's version is somewhat different. The record indicates that a letter was addressed by defendant to plaintiff on January 31, 1969, confirming a conversation earlier had with a Mr. O'Shea on behalf of plaintiff. The letter assured plaintiff he would receive defendant's answer to Blitz's proposal by February 7, 1969, and if that was not satisfactory " please feel free to withdraw Mr. Blitz's offer at any time." Defendant acknowledges receipt of the written offer of February 6, 1969, noting that offer did not state Blitz would pay the commission, called for a deferred closing date, and provided for payment by Blitz of " operating cost " for space which might be rented to Blitz from time to time. Macchia asserts that he did no more than say defendant would consider the offer, that such offer would be submitted to the management of Allied and, if approved, then to Allied's board of directors or the executive committee of the board.

The question is whether on this record plaintiff has made such showing of double employment as entitles him to recover. In our view he has not.

It is noted that there are no supporting affidavits from the cobrokers or from Joseph P. Blitz or Blitz's partner, both of

whom, according to plaintiff, were present at the February 6, 1969, meeting. Nor does it appear that plaintiff's employer Blitz was aware of any asserted double employment.

In *Pease & Elliman* v. *Gladwin Realty Co.* (216 App. Div. 421) defendant not only knew that plaintiff broker would receive commissions from the owner if defendant executed a lease, but defendant wrote a letter to plaintiff agreeing to enter into a 21-year lease at an annual net rental setting forth full particulars. The terms were accepted by the owner and defendant thereafter refused to enter into a lease on the terms to which he had previously agreed. Plaintiff was properly held entitled to damages measured by the amount of commission he would have received.

Plaintiff rests much of his claim of employment on the alleged statement of Macchia that if $9,800,000, all cash, were obtained there would be a firm deal. He characterizes this as a significant departure from previous offers and terms it a request by defendant to obtain an all-cash purchaser. This is a somewhat nebulous base on which to premise authorization or employment, particularly when the previous offers were $9,700,-000 ($8,000,000 cash and $1,700,000 purchase-money mortgage), $10,000,000 ($7,500,000 cash, $2,500,000 mortgage), $9,800,000 cash, Blitz to pay the commission. The writings in the record plainly indicate that even the $9,800,000 offer while under consideration could freely be withdrawn without obligation on the part of Blitz. This case may be distinguished from *Pease & Elliman* v. *Gladwin Realty Co.* (*supra*), where there was a firm contract, or even from *Westhill Exports* v. *Pope* (12 N Y 2d 491), where the authorization was clear and the contract was specific on its terms. The refusal to enter into the agreement was merely due to a preference to resume relations with defendant's old supplier of newsprint with whom defendants had resolved their differences.

Admittedly the mere fact that plaintiff had been employed by Blitz does not in and of itself preclude employment by Allied. However, as set forth in *Grossman* v. *Herman* (266 N. Y. 249, 252) "the question always is whether the facts in a given case may be held as a matter of law to justify an inference of double employment * * *. There must be an existing contract between the plaintiffs and defendants which the latter had broken with resulting liability for damages". The documentary proof in this case, in addition to oral averments, negatives any contract of employment of plaintiff by defendant (cf. *Duross Co.* v. *Evans*, 22 A D 2d 573). Certainly the facts

do not as a matter of law justify an inference of such employment. In fact each letter characterizes the figure submitted as an "offer." Nowhere is the figure denominated an acceptance. Moreover, it was requested of Macchia, who was known by plaintiff to be defendant's director of real estate, that the offer be submitted to defendant Allied. There is no ambiguity in the documents and plaintiff has failed to establish a contract of employment. In passing it is noted that the Statute of Frauds would not be a valid defense if the contract were established.

The order appealed from should be reversed on the law and defendant's motion for summary judgment granted, with costs to appellant.

McGivern, J. (dissenting). I find nothing of substance in the plaintiff's defense to this motion by the defendant to induce me to conclude the plaintiff's position is clearly sham and insufficient as a matter of law. The plaintiff herein had just been awarded priority of examination. Instead of complying and going ahead with the examinations, which the defendant had sought, the defendant counterstruck with this motion for summary judgment. I believe the motion was prematurely brought and that Special Term was correct in denying it.

On the appeal papers, Macchia is the director of real estate of the Allied Chemical Corporation, and ostensibly had authority to generate deals pertaining to realty, without the prior approval of Allied's board of directors. And a $9,800,000 all-cash deal was a significant departure from previous discussions which came to naught. On these two salient facts, we have a fair question, which cannot be determined in this submission alone. For if true, plaintiff may very well be within *Peace & Elliman* v. *Gladwin Realty Co.* (216 App. Div. 421) and *Westhill Exports* v. *Pope* (12 N Y 2d 491) and he could recover. The majority action is a too precipitate rejection of the plaintiff's complaint.

Eager, Nunez and Steuer, JJ., concur with Stevens, P. J.; McGivern, J., dissents in opinion.

Order, Supreme Court, New York County entered on March 30, 1970, reversed, on the law; defendant's motion for summary judgment dismissing the complaint granted. Appellant shall recover of respondent $50 costs and disbursements of this appeal.