*39
 
 Scileppi, J.
 

 This is an action to recover real estate brokerage commissions against respondent Success Properties Corporation, owner of a parcel of real property at the time the alleged brokerage contract was made, George L. Lunny, president of Success Properties, and Lawlet Corporation which now owns the property. At the trial, the jury was presented with sharply disputed issues of fact which were resolved by the jury in favor of the appellant broker.
 

 Louis Licht, president of appellant and a licensed real estate salesman, testified that in December, 1966 he was approached by one Gerald Cunningham to find property suitable as a garage for his father-in-law’s (Frank Dorrian) taxicab business. In February, 1967, he visited a garage building in New York County and, after asking for the owner, was referred to George Lunny. He met Mr. Lunny and his associate, Mr. Joseph T. McVay and inquired whether the property was for sale. Lunny represented that he was the owner of the property and told Licht that the asking price was $23 a square foot or $830,000. Licht secured a listing of the property from Lunny and it was agreed that brokerage commissions would be the standard rate as set by the Beal Estate Board of New York ($19,000). He also informed Lunny that he had a prospective buyer, but that the price might be too high. Subsequently, he conferred with Cunningham who said that he would only offer $750,000. Thereafter, Lunny visited Licht’s office and Lunny agreed to-reduce his price to $800,000. Cunningham, in turn, agreed to purchase the property at that price; and discussion then ensued as to the mortgage on the property. There was a $548,000 first mortgage and a $115,000 — 8% interest — second mortgage on the parcel. Licht informed Lunny that the interest rate was too high on the second mortgage and said:
 

 ‘ ‘ Look, my people will pay six plus one, six percent interest and one percent toward amortization.”
 

 Lunny said, “ All right, I’ll go back to Marshall [second mortgagee], but I may have to reduce the mortgage.”
 

 Licht said, ‘ Okay, if it will take some ten or fifteen thousand dollars to reduce the mortgage I can get my people to go along with you.”
 

 
 *40
 
 Thereafter, Lunny reported back to Licht that he had seen the second mortgagee and that if the purchaser would come up with $15,000 more cash, it would be given to Marshall and ‘ ‘ he [Lunny] would get the interest rate reduced to six percent at an amortization item of one percent Inasmuch as this was agreeable to the purchaser, Licht considered it a firm agreement.
 

 Lunny gave Licht the name of his attorney, Harold Kieval, and' Licht thereafter relayed the terms of the proposed purchase and the commission agreement to the attorney. He also gave Kieval the name of the buyer’s attorney and subsequently, a copy of a commission agreement was sent to Licht for execution. This agreement recited,
 
 inter alia,
 
 that the commission was to be $15,000 and that Licht would waive all rights if the deal was not consummated. Hpon receipt of the agreement, Licht called Kieval and told him that it was unacceptable as it did not reflect the commission agreement made with Lunny. The matter was to be straightened out at the contract closing. When the time came for the execution of the contract between Lunny and the purchaser (March 27,1967), it was learned that the property was no longer owned by Lunny or Success Properties. A Mr. Goglio had been given an option to purchase the property and had exercised it. The property is now owned by respondent Lawlet Corporation—Goglio’s nominee. It appears that on January 16, 1966 Lunny, who was in financial trouble, borrowed $30,000 from Goglio, consolidated it with an earlier loan and secured both loans with a $65,000 mortgage.- The mortgagor was required to deposit taxes and interest monthly with the mortgagee and in the event of a default, a deed would be executed to the mortgagee in lieu of foreclosure. Lunny defaulted on February 1, 1967 and on February 3, surrendered title by deed. Notwithstanding this change of title, Lunny remained in possession and continued to offer it for sale; he testified at the trial that he did so with the permission of Lawlet Corp., that is, Goglio.
 

 Cunningham, the prospective purchaser corroborated most of Licht’s story. He testified that he had asked Licht to find a suitable parcel and that Licht later told him that one was available for $830,000. Cunningham told him that he wanted the property ‘1 for as nominal an amount as you can ’ ’ and that he would go as high as $800,000. Subsequently, Licht reported back to him that the latter amount was acceptable to the seller. This
 
 *41
 
 conversation gave rise to the counteroffer requesting a reduction on the second mortgage. Licht later told Cunningham that Lunny had indicated that he was able to secure the reduction and that the deal was set. In addition to this testimony, evidence was introduced tending to show that Cunningham was at all times ready, willing and able to meet the terms set by the seller. In addition to Cunningham, Dorrian, the other partner in the taxicab business, gave similar testimony.
 

 Respondents called witnesses who testified that the Cunningham group had been interested in the subject property since November, 1966 and that McVay, Lunny’s associate, had been contacted. McVay allegedly reported to the Cunningham’s representative that the price would be $830,000 and in December the property was inspected. Present at this inspection were Dorrian and Cunningham. Subsequent discussion ensued, and in January, 1967 the seller offered $800,000 as his price. This was rejected by Cunningham who counteroffered with $650,000 and negotiations broke off.
 

 Subsequent thereto, Lunny’s financial condition worsened and the Goglio group took over the property. Respondents contended that it was after this that Cunningham apparently contacted Licht. McVay testified that he and Lunny first met with Licht on March 3, 1967 and said that there had been no discussion as to „ the terms of the second mortgage, but added that Lunny offered Licht a $15,000 commission. Licht replied that they would talk about it later. McVay did recognize the tentative existence of a deal provided that the commission would be limited to $15,000. Lunny also contradicted Licht on the dates, the amount of the commission and denied that he had represented to Licht that the second mortgage would be modified. He said that ‘ ‘ if we agree on everything I will try to get this condition for you. I will go to the principal and I will ask her to give you, to try to work out this mortgage so she can hold it for whatever term you would want. ’ ’ His recollection was that he merely said that he would speak to the second mortgagee. Lunny also claimed to have told Licht that the property was owned by Success Properties, but admitted that he had executed the option agreement, as security, to the Goglio group.
 

 At the conclusion of the trial, these divergent stories were submitted to the jury which, apparently accepting the appellant’s
 
 *42
 
 version of the transaction, returned a verdict of $19,000 plus interest against the three defendants. On appeal, the Appellate Division reversed the judgment on the law and the facts and dismissed the complaint (see 33 A D 2d 924).
 

 Since this was a jury case and the Appellate Division dismissed the complaint as a matter of law, the question before us is whether, considering the evidence in the light most favorable to the plaintiff, it has made out a prima facie case
 
 (Sagorsky
 
 v.
 
 Malyon, 307
 
 N. Y. 584, 586;
 
 Stein
 
 v.
 
 Palisi,
 
 308 N. Y. 293, 294). Turning to that question, it is a well-settled rule in this State that in the absence of an agreement to the contrary, a real estate broker will be deemed to have earned his commission when he produces a buyer who is ready, willing and able to purchase at the terms set by the seller (see, e.g.,
 
 Hecht
 
 v.
 
 Meller,
 
 23 N Y 2d 301;
 
 Levy
 
 v.
 
 Lacey,
 
 22 N Y 2d 271;
 
 Wagner
 
 v.
 
 Derecktor,
 
 306 N. Y. 386;
 
 O’Hara
 
 v.
 
 Bronx Consumer Ice Co.,
 
 254 N. Y. 210;
 
 Colvin
 
 v.
 
 Post Mtge. & Land Co.,
 
 225 N. Y. 510;
 
 Reis Co.
 
 v.
 
 Zimmerli,
 
 224 N. Y. 351;
 
 Davidson
 
 v.
 
 Stocky,
 
 202 N. Y. 423;
 
 Smith
 
 v.
 
 Peyrot,
 
 201 N. Y. 210;
 
 Gilder
 
 v.
 
 Davis,
 
 137 N. Y. 504). Thus, in
 
 Hecht (supra)
 
 we sustained a broker’s claim to a commission notwithstanding the fact that the contract between buyer and seller was unenforceable due to the Uniform Vendor and Purchaser Risk Act (General Obligations Law, § 5-1311). As the court wrote
 
 (Hecht,
 
 23 NY 2d,
 
 supra,
 
 at p. 305): “At the juncture that the broker produces an acceptable buyer he has fully performed his part of the agreement with the vendor and his right to commission becomes enforcible.
 
 The broker’s ultimate right to compensation has never been held to be dependent upon the performance of the realty contract or the receipt by the seller of the selling price unless the brokerage agreement with the vendor specifically so conditioned payment.
 
 (See, e.g.,
 
 Levy
 
 v.
 
 Lacey, supra,
 
 p. 274.) As we stated in
 
 Gilder
 
 v.
 
 Davis (supra,
 
 p. 506):
 
 ‘
 
 If from a defect in the title of the vendor, or from a refusal to consummate the contract on the part of the purchaser for any reason, in no way attributable to the broker the sale falls through, nevertheless the broker is entitled to his commissions for the simple reason that he has performed his contract.’ ” (Emphasis supplied.) The parties are, of course, free to provide otherwise by agreement. For example, they can condition the seller’s liability on the closing of title or require the broker
 
 *43
 
 to supply a buyer to purchase the property at a specified price “ with terms to be arranged.” In the former case the broker would not earn a commission if the deal were not consummated (see
 
 Levy
 
 v.
 
 Lacey,
 
 22 N Y 2d,
 
 supra,
 
 at p. 274) and in the latter situation, there would be no commission if terms were not arranged (see
 
 Kaelin
 
 v.
 
 Warner,
 
 27 N Y 2d 352, decided Jan. 13, 1971). It should be observed, however, that even where the broker and seller expressly provide that there shall be no right to a commission unless some condition is fulfilled, and the condition is not performed, the seller will nevertheless be liable if he is responsible for the failure to perform the condition
 
 (Levy
 
 v.
 
 Lacey,
 
 22 N Y 2d,
 
 supra,
 
 at p. 276, compare with
 
 Warnecke
 
 v.
 
 Countrywide Realty,
 
 29 A D 2d 54, affd. 22 N Y 2d 823, mot, for rearg. den. 22 N Y 2d 972).
 

 The Appellate Division appears to have overlooked these rules, and instead, relying on sections 5-703 and 5-1111 of the General Obligations Law, has premised its view on the notion that the sale was conditioned on a modification of the second mortgage. Since the broker had failed to introduce proof of written modification, the court concluded that he did not make out a prima facie case for a brokerage commission. This is untenable. Firstly, the question whether the sale was conditional was one of fact which was implicitly resolved against respondent by the verdict for the appellant; consequently the Appellate Division’s statement that the sale was conditional (33 A D 2d 924) was an intrusion on the jury’s role as trier of the facts. The court also held that Lunny was not personally hable under CPLR 3002 (subd. [b]) because he disclosed to Lieht that he was the agent for Success Properties. As to this latter point, suffice it to say that, the question of disclosure was also one of fact, and the Appellate Division’s finding on this ground was an unwarranted finding of fact in a jury case (see Cohen and Karger, Powers of the New York Court of Appeals [rev. ed„], § 135, p. 556; CPLR 5522). Licht said that he was never told by Lunny that Success owned the property. When confronted with a prior inconsistent statement regarding the question of Lunny’s disclosure, he was equivocal, saying that if Lunny told him, then he dealt with Lunny on behalf of the corporation. The issue was for the jury to determine and not the Appellate Division.
 

 
 *44
 
 Turning to the Appellate Division’s reliance on the Statute of Frauds, it is our view that this consideration is beside the point, since sections 5-703 and 5-1111 have no application to the case at bar. Section 5-1111 merely provides that agreements, promises, undertakings or assignments or offers within the Statute of Frauds (see General Obligations Law, §§ 5-1103, 5-1105, 5-1107, 5-1109 and 5-703, subds. 1 and 2) are void where executed by an agent whose authority is not in writing. Similarly, section 5-703 requires contracts relating to interests iñ real property to be in writing. These sections apply only where the agreement sought to be enforced is the main agreement that is within the Statute of Frauds and the party sought to be charged is the agent’s principal. This was not, however, involved in the instant lawsuit. Appellant is in no way attempting to enforce the contract of sale or to obtain damages for its breach. It does not seek a modification of the second mortgage and does not seek to hold the second mortgagee accountable for any breach of a proposed agreement. The question presented is not whether Cunningham, the buyer, has any rights to the property in question, but whether the broker earned his commission. Since the commission agreement is not within the Statute of Frauds (see General Obligations Law, § 5-701, subd. 10; 49 Am. Jur., Statute of Frauds, § 407, p. 713), the fact that neither the agreement nor Lunny’s authority was ever reduced to writing does not defeat appellant’s claim.
 

 Consequently, all a broker need do to establish a prima facie case is introduce evidence tending to show the existence of a commission agreement and that he has procured a ready, willing and able purchaser at the price and terms of the seller. These are all questions of fact and as such must be resolved by the jury. Appellant met this burden by Licht’s testimony that he had dealt with Lunny and that as a result the terms given by Lunny and the amount to be paid were agreed upon. Appellant also produced the purchaser and there is no question but that he was able to meet all of the terms set by Lunny. According to Licht, Lunny said that he would sell the property if Licht supplied a buyer who would purchase at the specified price. In addition, he testified that Lunny agreed that these terms would include a modification of the second mortgage. Licht reasonably secured the acceptance by Cunningham of this offer, and the fact
 
 *45
 
 that Lunny was unable to obtain the modification is not relevant to the question as to whether the broker earned his commission
 
 (Hecht
 
 v.
 
 Meller,
 
 23 N Y 2d 301, supra). Whether Lunny was acting for himself, Lawlet, Success Properties or all three, are questions of fact resolved against the respondents by the jury. Thus, the record clearly indicates that a prima facie case was made out.
 

 We are nevertheless powerless to reinstate the judgment of the trial court because the Appellate Division order recited an alternate basis for its reversal, i.e., that it was on the facts. In a jury case, that court lacks the power to reverse on the facts and at the same time dismiss the complaint. It must order a new trial (see Cohen and Karger, Powers of the New York Court of Appeals [rev. ed.] § 135, p. 556; CPLR 5522). Consequently, since we disagree with the Appellate Division’s view of the law, and conclude that a prima facie case was established, a new trial is required (see Powers of the New York Court of Appeals,
 
 supra,
 
 § 131, at p. 540; § 139, at p. 568).
 

 Accordingly, the order appealed from should be reversed and a new trial ordered, with costs to abide the event.
 

 Chief Judge Fuld and Judges Bergan, Breitel, Jasen and Gibson concur; Judge Burke taking no part.
 

 Order reversed, etc.