■ JULIEN J. STUDLEY, INC., Respondent, v NEW YORK NEWS, INC., et al., Appellants.—Order, Supreme Court, New York County (Lester Evens, J.), entered March 11, 1986, which denied defendants' motion for summary judgment, is reversed, on the law, with costs and disbursements, defendants' motion granted, and the action dismissed.

The action is brought by a real estate broker to recover a commission. In essence, the complaint alleges that plaintiff found a party interested in purchasing certain property defendants wanted to sell; that plaintiff advised defendants of the terms of such prospective purchaser's offer; that plaintiff advised defendants that such offer was subject to a 3% broker's commission; that plaintiff introduced the prospective purchaser to defendants; that defendants and the prospective purchaser negotiated with one another and drafted a contract of sale; and that plaintiff is entitled to a commission in that the prospective purchaser stood "ready, willing and able to

purchase the premises on the terms and conditions agreed to by the defendants." The draft contract provided for a $15 million purchase price, but, the day before it was to be executed, defendants withdrew from the deal.

Defendants seek dismissal on the ground that they never employed plaintiff to act as their broker. And indeed, noticeably absent from the complaint is any allegation that the parties expressly entered into a brokerage contract. This omission, however, may not have been inadvertent. With respect to its employment by defendants, plaintiff's argument is that it performed a service which benefited defendants, and that defendants knew or had reason to believe that such service was rendered with an expectation of payment; in other words, that employment is to be implied in fact (citing 11 NY Jur 2d, Brokers, §§ 94, 171). There is no merit to this argument. The facts adduced on the motion show without question that any expectation on plaintiff's part that it was to be paid by defendants was wholly unwarranted.

In support of this ostensible implied-in-fact brokerage contract, plaintiff relies on preintroduction conversations it had with defendants wherein, as best the court can make of plaintiff's account thereof, and giving it every favorable interpretation, an understanding was reached that if and when defendants should ever ask plaintiff to procure a purchaser, plaintiff, in making defendants' terms and conditions known to prospects, would increase the "asking price" specified by 3%. This additional 3% represented plaintiff's commission, presumably to be paid by defendants out of the sales proceeds. Accepting plaintiff's version of these conversations as true, it does not serve to raise an issue of fact as to whether there was an employment. It is undisputed that defendants never did specify terms to plaintiff; it is also undisputed that the $15 million price defendants asked for in their negotiations with plaintiff's prospective purchaser did not include the 3%. As between the parties, all that happened is that plaintiff submitted a $9 million offer on behalf of a prospective purchaser, advised defendants in writing that such offer was subject to a 3% broker's commission without indicating whether it was to be paid by the buyer or seller, and gave expert advice to the prospective purchaser during the negotiations that ensued. The words "submitted an offer on [the prospective purchaser's] behalf" are plaintiff's own, used in the complaint to describe its unsolicited approach to defendants; similar modes of expression are to be found throughout plaintiff's deposition. Such usage, if not an outright admission dispositive of the

issue of employment, strongly evidences plaintiff's understanding that it was acting as the purchaser's agent, and that its activity as an agent was developed wholly in buying the property and not in selling it *(see, Simon v Allied Chem. Corp.,* 35 AD2d 273, 276; *Haynes v Fraser,* 76 App Div 627; *Kaake v Griswold,* 104 App Div 137). Clearly, vis-à-vis defendants, plaintiff was, as the cases sometimes put it, a "mere volunteer" *(see, Naum v Wiltsie,* 271 App Div 169; *Benedict v Pell,* 70 App Div 40).

The dissent would find a triable issue of fact from the letter plaintiff wrote to defendant, dated July 5, 1983, identifying a prospective purchaser with an offer of $9 million, and advising that "[t]he offer is subject to [plaintiff] receiving a commission of 3% of the sales price." According to plaintiff, shortly before July 5, the parties had a telephone conversation, initiated by plaintiff, wherein plaintiff advised that it had a prospect offering $9 million subject to plaintiff receiving a full commission. Defendant inquired as to plaintiff's commission rates and, after being advised, responded that any commission would have to be added to the asking price. Defendant then requested plaintiff to submit the offer in writing. At no time in this or any other preintroduction conversation did defendant ever specify an asking price, or ask plaintiff to find prospects. The letter itself, while purporting to confirm this conversation, does not purport to confirm any agreement between the parties. It does not specifically propose that the commission be paid by defendant; nor does it give any indication as to when the commission was to be earned. The letter represents nothing more than an unsolicited offer accompanied by the statement that plaintiff considered the offer "subject to" its receiving a commission. At best, it was a simple request for a commission from some party to a proposed deal. That the letter may have enticed defendant into meeting with plaintiff's prospect does not manifest a " 'plain intent' " on defendant's part to ratify plaintiff's acts in bringing about a meeting *(Benedict v Pell, supra,* at p 45), or otherwise make plaintiff any the less a volunteer. " 'It is well settled that if a broker, without a previous request, brings a customer to a vendor, and the latter, without further acceptance of the broker's services, takes the customer, the broker is not entitled to a compensation.' " *(Meltzer v Flying Fame,* 224 App Div 41, 43, quoting *Fowler v Hoschke,* 53 App Div 327, 329.) " 'An owner cannot be enticed into a liability for commissions against his will. A mere volunteer without authority is not entitled to commissions, merely because he has inquired the

price which an owner asks for his property, and has then sent a person to him who consents to take it.' " *(Benedict v Pell, supra,* at p 45.)

If ever there was a question as to who was to pay for plaintiff's services, it was resolved during the negotiations between defendants and the prospective purchaser in which, the deposition testimony clearly shows, plaintiff fully participated as the purchaser's representative. Defendants insisted that plaintiff's commission be paid by the buyer, which demand was acknowledged and acceded to by plaintiff in a letter it wrote to defendants' representative in the negotiations. The understanding that plaintiff was to look to the purchaser for its commission is further evidenced by the fact that plaintiff actually entered into a written brokerage contract with the prospective purchaser, as it represented it would do in the letter it wrote to defendants' representative. The legal effect of this documentary evidence is to negate any implication of an employment. " 'A contract cannot be implied *in fact* where the facts are inconsistent with its existence; or against the declaration of the party to be charged; or where there is an express contract covering the subject matter involved; or against the intention or understanding of the parties' " *(Adams & Co. Real Estate v E. & B. Super Mkts.,* 26 AD2d 365, 366-367, quoting *Miller v Schloss,* 218 NY 400, 406-407; 11 NY Jur 2d, Brokers, *op cit.).* Concur—Sullivan, J. P., Milonas and Wallach, JJ.

Fein and Ellerin, JJ., dissent in a memorandum by Fein, J., as follows:

I respectfully dissent. In granting summary judgment for the defendant, the majority has assumed certain facts and decided others. This is not the function of summary judgment.

In early 1983, plaintiff's vice-president, Stanley H. Kovak (Kovak), called the Chicago office of the Tribune Company (which controlled the New York Daily News) and asked to speak to the individual in charge of the Daily News garage at 220 East 41st Street in New York City to determine whether the garage site was for sale. Henry Barkhausen (Barkhausen), the director of real estate, told Kovak that the property was to be sold but that the asking price had not yet been determined. Kovak offered the property to Goodstein Construction Corp. (Goodstein), which authorized plaintiff to offer the Tribune Company $9 million for the garage site. Kovak spoke to Barkhausen on the phone about the offer and mentioned that it was subject to plaintiff's commission rates. Barkhausen

requested that the offer be submitted in writing. On July 5, 1983, Kovak wrote to Barkhausen, submitting the $9 million offer and stating: "Enclosed is the portfolio for the Goodstein Construction Corp. As I mentioned to you they would be interested in acquiring the above captioned site at a price of $9,000,000 all cash. The offer is subject to Julien J. Studley, Inc. receiving a commission of 3% of the sales price."

Other conversations followed. According to plaintiff, Barkhausen raised no question as to plaintiff's commission, although Barkhausen now asserts he stated any commission would be added to the asking price. It is plain from the face of that communication that a jury could find that it was expected and recognized that defendant would pay a real estate commission to plaintiff of 3% of the sales price. There is plainly a triable issue of fact as to what was said. There is no writing from defendant supporting Barkhausen's statement.

Barkhausen discussed the offer with his own people. He did not respond to the letter until he received a valuation from the Tribune's real estate consultant who valued the property at $13 million. Barkhausen requested a meeting with the prospective purchaser and suggested that the meeting take place at plaintiff's office in New York City. The meeting took place on July 25, 1983. Present were Barkhausen; Messrs. John Ryan and Mike Reid from Landauer Associates, Inc. (Landauer), the Tribune's real estate consultant; Steven and Martin Goodstein and Arthur Cohen, the proposed buyers; and Julien J. Studley and Stanley Kovak of the plaintiff brokerage firm.

After a lengthy discussion, Ryan stated that the Tribune would like to make a fast deal and that the asking price was $15 million, all cash and "net". Plaintiff's commission was to be added to the $15 million or to be paid directly by the purchasers. This was the first time that the Tribune had suggested that the buyer pay the commission. The Tribune agreed that if Goodstein accepted the proposal, it would agree not to deal with anyone else. Goodstein accepted and the meeting ended with handshakes.

Plaintiff then entered into a written agreement with Goodstein which provided that if and when Goodstein received the garage site, Goodstein would pay plaintiff $300,000. The Tribune Company was not a party to that agreement. The Tribune Company board authorized the sale. However, on the date fixed for contract signing, although Goodstein was prepared to make the requisite down payment, the Tribune Company refused to proceed with the deal. It had agreed to sell to

another for more money. Goodstein immediately offered to pay the Tribune Company $500,000 more than the other offering, but this was rejected.

Plainly there is a question of fact whether there was an agreement between defendants and the broker that defendants would pay a 3% commission. Defendants argue, and the majority seems to assume, that when Kovak wrote stating that the $9 million offer was "subject to Julien J. Studley, Inc. receiving a commission of 3% of the sales price", the intention was that the buyer would pay the commission. Although the language is susceptible of that interpretation, it is equally susceptible to the interpretation that the seller was to pay the commission. Moreover, there was no need for this provision if it was understood that the buyer was to pay the commission. Barkhausen's conversations with Kovak and the meeting at plaintiff's office at least raise a question as to whether the intention was that if the Tribune accepted the Goodstein offer the Tribune would be responsible for the commission.

The majority makes much of the fact that plaintiff had a prospective purchaser when it approached the Tribune, and the fact that the terms of the deal as finally agreed upon were that the purchaser was to pay the commission. These facts are plainly not dispositive.

*Lane—Real Estate Dept. Store v Lawlet Corp.* (28 NY2d 36), the leading case on the subject, is to the contrary. There, the jury awarded the plaintiff a verdict. The Second Department reversed and dismissed the complaint (33 AD2d 924). The Court of Appeals reinstated the complaint, stating that the issue of the broker's employment must be resolved by the jury (28 NY2d, at p 44): "[A]ll a broker need do to establish a prima facie case is introduce evidence tending to show the existence of a commission agreement and that he has procured a ready, willing and able purchaser at the price and terms of the seller. These are all questions of fact and as such must be resolved by the jury."

Barkhausen, for defendants, was well aware that plaintiff was a real estate broker. He told Kovak that the site would be for sale subject to a determination of a proper price. Kovak's letter confirming prior conversations indicated that the commission would be 3%. Barkhausen does not deny that this occurred. He disputes who was going to pay the commission. On that basis there is an issue of fact, whether the Tribune agreed to pay a commission to plaintiff. That fact has been assumed or decided by the majority against plaintiff.

That is not the function of summary judgment, which is issue finding not issue determination *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *City Univ. v Finalco, Inc.,* 93 AD2d 792). Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue *(Moskowitz v Garlock,* 23 AD2d 943) or where the issue is even arguable *(Barrett v Jacobs,* 255 NY 520, 522). The fact that plaintiff was first acting for the buyer is not dispositive. As in *Lane (supra),* prior employment by the buyer is not dispositive on the issue of subsequent employment by the seller. Nor does it discharge the seller's liability for commissions to the broker (Biskind & Barasch, Real Estate Brokers § 66).

The fact that the transaction ultimately agreed upon required the buyer to pay the commission is not dispositive.

The fact that defendants insisted that plaintiff's commission be paid by the buyer when the deal was closed does not bar plaintiff's right to recover. Obviously, had defendants performed, the buyer would be required to pay the commission. The deal did not close because of defendants' failure to perform. This plainly does not relieve it of responsibility. The documentary evidence supports plaintiff on the issue before us. Kovak's letter and Barkhausen's response would be sufficient to warrant a jury verdict in favor of plaintiff.

*Adams & Co. Real Estate v E. & B. Super Mkts.* (26 AD2d 365), relied upon by the majority, is not pertinent. In that case an express contract respecting commissions was found to exist from the outset. There is no such contract here. Here there is an issue of fact as to whether defendants agreed to pay the commission if a deal was made. It is undisputed that plaintiff produced a purchaser who was ready, willing and able to close on defendants' terms. It is equally undisputed that defendants agreed upon the terms and then refused to perform. They cannot now rely upon the provision that plaintiff could recover a commission only from the buyer. Such commission would be payable only if the deal closed.

The fact that the buyer was powerless to enforce the agreement against defendants because of the Statute of Frauds does not relieve defendants of their obligation to pay the broker. Nothing in the cases cited by the majority is to the contrary. In several cases the judgment was after a jury trial, finding in favor of the seller where there was no basis for finding an agreement to pay a commission. On appeal it was emphasized that there was a jury issue *(see, Naum v Wiltsie,* 271 App Div

169, which is the source of the majority's characterization of plaintiff here as a " 'mere volunteer' ").

Thus, in *Simon v Allied Chem. Corp.* (35 AD2d 273, 276, *affd* 29 NY2d 861), this court held "There is no ambiguity in the documents and plaintiff has failed to establish a contract of employment." Not so here. The letter from plaintiff to defendants and the testimony of Kovak are sufficient to raise a triable issue.

*Benedict v Pell* (70 App Div 40), heavily relied on by the majority, is not to the contrary. There was a trial in that case, in which it was developed that there was never any conversation, writing or agreement supporting the plaintiff broker's claim. Moreover, he had dealt only with one Potterton, an agent of the defendant who was not shown to have any authority to bind the owner. Potterton testified he never discussed commission with the plaintiff and never represented he had authority to bind the owner. Moreover he was named in the contract as the broker entitled to commission. This has nothing to do with our case.

It is well settled that the broker's right to compensation is not dependent upon performance of the realty contract unless it is expressly so conditioned *(Lane—Real Estate Dept. Store v Lawlet Corp., supra)*.

There is a triable issue as to whether there was an agreement by defendants to pay a commission. It is undisputed that defendants' acts deprived plaintiff of a commission. The issue should not be tossed off on summary judgment.

The order appealed from should be affirmed, with costs.