OPINION OF THE COURT
David Friedman, J.
Jack Aliota, as seller, and Giovanni and Anna Paolilli, as purchasers, signed a document entitled "offer to purchase” *486 supplied by real estate broker U-Buy Realty, Inc. whereby Aliota agreed to sell 2281 West 1 St. in Brooklyn to the Paolillis. The "offer to purchase” provided for the seller to pay the brokerage commission pursuant to a separate agreement.
Attorney Herman J. Soloway representing Jack Aliota prepared a formal contract in which the sellers were named not only as Jack Aliota but also as Louis J. Aliota (Jack’s son) since they owned the property as joint tenants. The contract was executed on behalf of the sellers by Jack Aliota in his own capacity and as attorney-in-fact for Louis J. Aliota. While Jack Aliota never returned a signed copy of the brokerage agreement it is uncontroverted that he agreed to pay the broker $10,000.
Within two weeks of execution of the contract of sale Soloway contacted the Paolillis’ attorney and advised him that the deal was being canceled because Jack Aliota did not have a power of attorney authorizing him to sign the contract for Louis Aliota.
Subsequent to this cancellation the broker commenced this action seeking to recover its commission. The broker in its complaint claims that the defendants, Jack and Louis Aliota, agreed to pay a 6% commission if a purchaser was found for their building. The broker alleges that a ready, willing, and able purchaser (the Paolillis) was procured but that the Aliotas refused to go forward with the sale. The first cause of action states the broker is entitled to $17,400. As a second cause of action the broker states that the Aliotas agreed to pay a commission of $10,000 but have failed to do so. While unstated, the clear implication is that the Aliotas upon retaining the broker agreed to pay a 6% commission which was reduced to $10,000 when a purchaser was actually procured. Finally, a third cause of action maintains that the Aliotas have been unjustly enriched.
Jack Aliota interposed an answer and also served a third-party complaint against Soloway. The substance of the third-party complaint is that Attorney Soloway misled Jack Aliota into believing that he had authority to sign on behalf of Louis J. Aliota but that in fact Louis never executed a power of attorney granting such authority. As a result Jack Aliota improperly entered into a contract with the Paolillis and if any brokerage is due because of that agreement Soloway should ultimately pay it. Soloway’s answer asserts that the other parties were contributorily negligent.
*487 The matter is now before the court by virtue of a motion by the broker seeking summary judgment against Jack Aliota. In support of the motion the broker contends that it produced a buyer ready, willing, and able to purchase the premises on Aliota’s terms so that it is entitled to collect the $10,000 that was to be paid. As to the other causes of action in the complaint the broker asks that they be severed.
In opposing the motion, Aliota contends that he cannot be liable for a commission since any default by him was not willful. It is also Aliota’s position that if there is liability it is his lawyer’s fault since the legal advice he received inaccurately led him to believe that he had a power of attorney from his son, Louis. Based on this point Aliota also cross-moves for summary judgment against third-party defendant Soloway in the event the broker prevails on its motion for summary judgment. Aliota points out that while Soloway forwarded a power of attorney to son Louis for execution it was never returned.
In opposing the cross motion Soloway maintains that he had nothing to do with Aliota’s decision to retain a broker and that the broker, by producing a buyer acceptable to Aliota, earned his commission regardless of any later occurrences or legal malpractice.
The primary issue arising from these motions concerns the circumstances under which a real estate broker may collect a commission for procuring a ready, willing and able purchaser where only one of the joint owners of the property engaged him. Corollary issues involve the parameters of a broker’s and attorney’s duties to a principal operating under a power of attorney.
The rule is well established that a real estate broker will be deemed to have earned his commission when he produces a buyer who is ready, willing and able to purchase on the terms set by the seller (Lane — Real Estate Dept. Store v Lawlet Corp., 28 NY2d 36, 42; Graff v Billet, 101 AD2d 355, affd 64 NY2d 899). As a general proposition it would seem to follow that if a sale does not close because one of the owners refuses to convey title, the broker, having performed that for which he was hired, may recover a commission. It should also as a generalization follow that if only one of the owners retains the broker and he brings a ready, willing and able buyer the owner that retained the broker should pay the commission. This type of situation has frequently arisen between spouses *488 where only one spouse retained the broker and the other one later refuses to convey title. A majority of jurisdictions have held that such refusal is not a defense to the commission claim (Rohan-Goldstein-Bobis, Real Estate Brokerage Law and Practice § 4.04 [3]).
Examination of the few precedents on the subject in this State shows that while there is no clear rule concerning the circumstances under which a broker may recover where only one owner was party to the brokerage agreement, the broker’s knowledge of the co-ownership relationship is a key factor. Regarding this in Stein v Micelli (109 NYS2d 913), defendant husband hired a broker to find a purchaser for certain real property. After the broker found a customer defendant refused to go forward with the deal because his wife who owned the property jointly with him refused to sell. The broker sued to collect his commission and defendant contended none was owing because of his wife’s refusal to sell. In holding for the broker the court stated (at 916), "[T]he defendant sought out the broker and listed the property in question for sale. There was no obligation on the part of the broker to find out whether the defendant was the sole owner of the premises, or, in fact, whether he owned it at all. In employing the broker the defendant entered into an agreement rendering him liable for a commission if the broker produced a purchaser willing to purchase on acceptable terms.”
In a similar vein in Greiner-Maltz Co. v Stevens (66 Misc 2d 79) the broker’s contract was with only one of three co-owners. There was no evidence that the broker knew of the co-owners or that the co-owners in any way acquiesced in the brokerage agreement. The court determined that the broker was entitled to collect a commission but that only the owner he dealt with was liable.
Stein v Micelli (supra) and Greiner-Maltz Co. v Stevens (supra) both show that in the instant case the broker is entitled to judgment against Jack Aliota. All indications are that as far as the broker was concerned Jack Aliota was either the sole owner or also acting for his son under a power of attorney. Concerning the power of attorney there is no suggestion that the broker had a duty to ascertain its existence or status.
Reliance on Stein and Greiner-Maltz (supra) does not, however, resolve the matter. The reason is that in Falk v Krumm *489 (22 AD2d 911) the Appellate Division by a 3 to 2 vote denied a claim for commission where a broker was retained by only one of the owners.
In Falk (supra) the property was owned in tenancy by the entirety form by a husband and wife that were separated. The broker was retained only by the husband. The sale as arranged by the broker was not completed because it included conditions that were unacceptable to the wife. The dissent in arguing that the broker should collect his commission from the husband stated (at 912), "[T]he fact that the * * * husband was not authorized by his wife to engage the [broker] to find a purchaser for their property is no bar to recovery of a commission from the husband”.
In setting forth this position the dissent relied upon Kennon v Poerschke (148 App Div 839), Willner v McDonnell (185 NYS 837) and Pearsen v Lemken (34 Misc 2d 636).
These cases do of course support the principle that a broker is entitled to collect a commission even where only one of the owners hired him or even if the person who hired him does not own the property at all. These cases do not, however, discuss the question of what the broker knew about who owned the property.
This brings the subject to the view expressed by the majority in Falk (supra) and what appears to be the operative rule when a broker seeks to recover in these situations. In deciding the broker could not recover, the majority pointed out that the broker knew of the tenancy by the entirety and that the husband and wife were separated. In holding that even the husband was not liable to the broker the court stated that it was incumbent upon the broker to produce a buyer on terms acceptable to both owners.
It is true that Falk (supra) could be simply interpreted as barring recovery to a broker where only one of the owners retained him. Comparative analysis, however, of Falk with Kennon v Poerschke (supra); Willner v McDonnell (supra); Pearsen v Lemken (supra); Stein v Micelli (supra); and Greiner-Maltz Co. v Stevens (supra) makes such an interpretation seem incorrect. Moreover, there is no indication by the majority in Falk of an intention to change the then-existing rule. It must also be noted that Falk may not be regarded as standing sui generis because it involves a tenancy by the entirety as there is no basis presented by Falk for the view that tenancies by *490 the entirety have special rules vis-á-vis brokers.[1] I conclude rather that Falk may be considered consistent with the other cases if the determinative factor is the knowledge of the broker. Stated otherwise, where a broker is retained to sell a property by only one of its owners and he actually knows that there are other owners who may not acquiesce in the sale he acts at his peril and jeopardizes his commission notwithstanding that he produces a ready, willing and able buyer.[2] On the other hand if only one of the owners lists property with a broker and he does not know of co-owners or if he knows of co-owners and is advised that they join in the sale, the one who retained the broker will owe a commission when a ready, willing and able purchaser is produced.[3]
Applying these principles to the instant case the parties’ submissions show that the broker had no reason to question Jack Aliota’s authority to act. Any agreement to pay brokerage commission made by Jack Aliota is therefore enforceable against him by the broker. Since it is uncontroverted that there was an agreement to pay a $10,000 commission the broker is entitled to judgment in such amount and the broker’s motion for summary judgment is granted to that extent.
What remains for resolution is the cross motion by Jack Aliota for summary judgment against Attorney Soloway. It cannot be determined from the papers submitted when Solo-way was retained by Aliota, why the power of attorney was never executed by Louis J. Aliota and whether Soloway acted without negligence to prevent liability attaching to Jack Aliota for a commission. Certainly Soloway had a duty to prevent Jack Aliota from entering into a contract with the Paolillis and/or the broker or at least to advise as to the risks of acting without an executed power of attorney. Furthermore, even if *491 Soloway was not responsible for the misconceived listing of the property with the broker there is the question of whether he acted so as to diminish Jack Aliota’s liability to the broker. These matters involve questions of fact which necessitate denial of Jack Aliota’s cross motion for summary judgment.

. It should be recognized that there is a concept in a tenancy by the entirety, joint tenancy and tenancy in common of a tenant disposing of only his interest in the property (see, Son Fong Lum v Antonelli, 102 AD2d 258, affd 64 NY2d 1158; Field v Field, 130 Misc 2d 751). If a broker was given that task and brought a ready, willing and able purchaser solely for the tenant’s share his performance would be complete with the attendant right to collect a commission.

. While ownership of real property is a matter which can be ascertained by perusing public records there is no requirement that a broker verify the ownership of property listed with him (see, Greiner-Maltz Co. v Stevens, supra; Stein v Micelli, supra).

. Since listing agreements need not be in writing these issues will not necessarily be resolved by resort to written documentation (General Obligations Law § 5-701 [a] [10]).