■ R.L. FRIEDLAND REALTY, INC., Appellant, v MODERN CABINETS CORP. et al., Respondents. [598 NYS2d 817] —In an action to recover a real estate brokerage commission, the

plaintiff appeals from a judgment of the Supreme Court, Westchester County (Silberman, J.H.O.), entered August 27, 1990, which, after a nonjury trial, is in favor of the defendants and against it dismissing the complaint.

Ordered that the judgment is affirmed, with costs.

The plaintiff's brokerage agreement, in relevant part, provided for the payment of a real estate broker's commission "upon passing of title". In order to be entitled to a money judgment against the defendants, notwithstanding that title never passed, the plaintiff was obligated to prove that the defendants had willfully defaulted in complying with the obligations imposed upon them by virtue of a legally enforceable contract to convey the property in question (see, Lane— Real Estate Dept. Store v Lawlet Corp., 28 NY2d 36; North Site Realty Corp. v Walsh, 123 AD2d 144, 146).

The plaintiff argues, among other things, that the defendants willfully defaulted in complying with those provisions in the two related contracts, entered into between them and two related buyers, which required the production of a certificate of occupancy. An examination of one of these two contracts reveals, however, that the representative of the defendants had initialed the margin in order to signify his assent to the striking out of the typewritten provision which had stated that "seller [defendants] will produce [a] Certificate of Occupancy at or prior to closing and deliver same to [potential] purchaser" (emphasis added). The defendants' representative had also added a provision to this contract pursuant to which the buyer would "have the right within 12 days of this agreement * * * to determine that the purchaser's business * * * may be legally performed in said premises". These alterations to this contract demonstrate either that no agreement had been reached at all, or that the parties had agreed that the seller would not be responsible for the production of a certificate of occupancy.

More fundamentally, even if the clause requiring the seller to produce a certificate of occupancy remained in effect, notwithstanding its having been stricken out of one of the two parallel contracts, it required at most that a certificate of occupancy be furnished at the time of closing. The weight of the evidence establishes that the buyers could not, or would not, proceed to closing without a certificate of occupancy, because without an appropriate certificate of occupancy they could not obtain the necessary financing, and because they wanted to be assured that the premises could be used for the

manufacture of lighting fixtures. Although the defendants, in certain post-contract letters, indicated that they would furnish a certificate of occupancy, there is nothing in these letters which indicates that the defendants undertook to produce such a document prior to the closing. Moreover, the letters merely represented the proposed contractual modifications and were part of the on-going negotiations between the defendants and the proposed buyers, during which they were unable to resolve their differences.

Because the defendants had no contractual obligation to furnish a certificate of occupancy prior to the closing, we agree with the Supreme Court that the plaintiff failed to prove that the defendants willfully breached an enforceable contract. Therefore, the judgment under review is affirmed. Thompson, Bracken and Lawrence, JJ., concur.

Mangano, P. J., dissents and votes to reverse the judgment appealed from, on the law, with costs, and to remit the matter to the Supreme Court, Westchester County, for the entry of a judgment in the plaintiff's favor and against the defendants, in the principal sum of $30,000. By contracts of sale signed in March 1984 the defendants, a woodworking concern, agreed to sell their Mount Vernon building complex to Hasco Electric Corp. (hereinafter Hasco), a manufacturer of lighting fixtures, or, in the event that Hasco could not obtain sufficient financing, to Hasco's president, Samuel Benkel, for $500,000. The plaintiff, a real estate broker, had procured these buyers pursuant to an exclusive agency agreement with the defendants, which provided that the plaintiff would be entitled to a 6% commission on the sale, "due and payable upon passing of title". In the contracts of sale, the defendants warranted as follows: "Seller represents and warrants that a Certificate of Occupancy is in existence for the premises indicating that the premises to be conveyed are a legal building for the conducting of all business in the area which is zoned industrial, and further that the seller will produce such Certificate of Occupancy at or prior to closing and deliver same to purchaser."

Shortly after entering into the contracts, the defendants learned that no certificate of occupancy had ever been issued with respect to the building on lot 16, located in the complex. They were informed that the building on lot 16 did not require a certificate of occupancy as long as the building was used for woodworking, i.e., a use engaged in by the sellers which predated the City's requirement for certificates of occupancy, and that, henceforth, one certificate of occupancy would encompass the entire complex. In addition, Hasco dis-

covered that the defendants had failed to convey two noncontiguous lots that it assumed were included in the deal. Subsequently, by letter dated April 24, 1984, the defendants amended the contracts of sale to include the noncontiguous lots in exchange for a reduction in the plaintiff's commission from $30,000 to $27,000, though the plaintiff expressly reserved the right to seek its full commission of $30,000 in the event it was not paid "upon passing of title or upon willful default" by the defendants. The defendants further amended the contract by that very same letter dated April 24, 1984, as well as by letter dated August 27, 1984, wherein they agreed to Hasco's requests, in letters dated March 29, 1984, and August 17, 1984, respectively, that they immediately apply for, and obtain, the requisite certificate of occupancy. Specifically, on March 29, 1984, Hasco's attorney wrote to defendant's attorney as follows:

"As you are aware, in addition to a problem with the building department, the nonexistence of that certificate of occupancy would prevent the purchaser from securing the financing upon which the contract is conditioned. The seller should apply for a certificate of occupancy so that the entire premises are covered by certificates and the premises are entirely legal.

"In accordance with our conversation of March 29, 1984, I must have the following * * *

"b) A representation that the seller will apply for, secure and deliver to the purchaser a certificate of occupancy or certificates of occupancies covering the entire complex of buildings being conveyed".

The defendants' attorney responded as follows by letter dated April 24, 1984:

"Pursuant to your conversations with Jonathan Schor and me and in response to your letter dated March 29, 1984, Jonathan Schor as president of [defendants] and in his individual capacity has authorized me to send this letter amending a certain contract dated March 21, 1984 with HASCO Electrical Corp.* * *

"The sellers will supply a valid certificate of occupancy from the City of Mount Vernon Building Department covering the following* * *

"Block 3001, Lots * * * 16".

Again, on August 17, 1984, Hasco's attorney wrote to the defendants' attorney as follows:

"With regard to the new Proposed Contract which was delivered to my office in connection with the above mentioned matter, my comments are as follows* * *

"5. There should be a representation that the sellers will make immediate application for the new certificate of occupancy".

The defendants' attorney responded on August 27, 1984, as follows: "I have discussed with my client the seven points outlined in your August 17th letter, and they are acceptable". The evidence at trial clearly demonstrated that the defendants authorized their attorney to send these letters. Subsequently, the defendants canceled the deal, without ever applying for the certificate of occupancy, and refunded Hasco's initial deposit.

The Supreme Court held that while a legally enforceable contract existed for the sale of the complex, including the two noncontiguous lots, the defendants' failure to provide Hasco and/or Benkel with the certificate of occupancy did not constitute a willful default which prevented title from closing and, therefore, the plaintiff was not entitled to its commission. I disagree.

While a broker and a seller may condition payment of the broker's commission upon the passage of title (see, Graff v Billet, 101 AD2d 355, 356, affd 64 NY2d 899; see also, Lane—Real Estate Dept. Store v Lawlet Corp., 28 NY2d 36), nevertheless, where the broker expressly reserves the right to obtain his commission upon the willful default of the seller, the broker is entitled to its commission if the failure to close title results from the sellers' willful breach of the contract of sale (see, Lane—Real Estate Dept. Store v Lawlet Corp., supra; North Site Realty Corp. v Walsh, 123 AD2d 144, 146). The letters of the respective attorneys dated March 29, 1984, August 17, 1984, April 24, 1984, and August 27, 1984, clearly demonstrate that (1) the defendants were made aware that Hasco needed the certificate of occupancy both to secure adequate financing as required in the contracts of sale and to ensure that it could initiate a new use, i.e., the manufacture of lighting fixtures in the building on lot 16, and (2) after the defendants were advised by Hasco that no certificate of occupancy existed for lot 16, they amended the contract by agreeing to immediately apply for the certificate of occupancy, a promise which they utterly failed to perform.

The majority's reasoning and conclusion to the contrary is fundamentally flawed. Initially, the majority holds that the seller was not responsible at all for the production of the certificate of occupancy since a representative of the defendants initialed the margin on one of the contracts in order to signify its assent to the striking out of the typewritten provi-

sion which had stated that "seller [defendants] will produce [a] Certificate of Occupancy at or prior to closing and deliver same to [potential] purchaser". However, this reliance is misplaced, in view of the Supreme Court's correct ruling that this alteration was of no effect "absent the initialing of such change by the purchaser". Alternatively, the majority relies on the contract's language that the certificate of occupancy would be furnished at the closing. However, this approach is untenable in light of the amendment to the contract which the defendants agreed to in their letters dated April 24, 1984, and August 27, 1984.

Accordingly, in my view, pursuant to the terms of its agreement with the defendants herein, the plaintiff is entitled to its full commission, as a matter of law, and the matter should be remitted to the Supreme Court, Westchester County, for the entry of an appropriate judgment in favor of the plaintiff, and against the defendants, in the principal sum of $30,000.