**In re Helen M. COSTELLO, Debtor.**

**Bankruptcy No. 93–229–8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 8, 1994.

D. Turner Matthews, Bradenton, FL, for debtor.

V. John Brook, Jr., Trustee, Saint Petersburg, FL.

Dennis J. Levine, Tampa, FL, for trustee.

Charles F. Arnold, Saint Petersburg, FL, John J. Gable, Albany, NY, for claimant.

## ORDER ON OBJECTION
## TO CLAIM # 11

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matter before the Court is an Objection to Claim # 11 filed by the Chapter 7 Trustee (Trustee). Claim # 11 is filed by H.D. Roberts Real Estate Co., Inc. d/b/a Roberts Real Estate (Roberts) as an unsecured claim in the amount of $139,000.00. The Claim is based on a real estate commission allegedly due Roberts for locating a willing and ready buyer for property owned by Helen Costello (Debtor) located in Troy, New York. The Trustee has objected to the Claim on the grounds that the Debtor is not indebted to the Claimant as no written agreement exists between the parties. The facts relevant to the resolution of this controversy as established at the final evidentiary hearing are as follows:

Roberts is a real estate broker doing business in Troy, New York. The Debtor owns a number of apartment buildings, all located on Washington Place in Troy, New York. In April of 1990, Barbara Carey (Carey) an agent with Roberts began contacting the Debtor on a regular basis to inquire as to the Debtor's interest in selling her apartment buildings, and employing Carey as the exclusive listing agent. The Debtor was not interested in selling her property in Troy, however, she was interested in refinancing the property in order to pay outstanding city taxes on the property and unequivocally stated that she would not allow a real estate broker to represent her with regard to the sale of the Washington Place properties even if the properties are offered for sale. Notwithstanding the Debtor's unwillingness to allow Carey to represent her, Carey prepared exclusive listing agreements for the representation of the Debtor and forwarded these agreements to John Darling, Esq., (Darling) an attorney in Troy, New York who had regularly represented the Debtor in the past. Darling was advised by the Debtor that she was not interested in representation by Carey for the sale of the Washington Place properties. It is without dispute that the Debtor never signed the exclusive listing agreement prepared by Carey.

Carey apparently continued to attempt to find a buyer for the Washington Place properties, and on May 8, 1990 presented an offer to purchase the Washington Place properties by Christopher Paticopoulos (Paticopoulos) through Paul Marsh (Marsh), the property manager in charge, to the Debtor, who offered to pay $680,000.00 for the properties. Carey resubmitted an offer by Paticopoulos for a purchase price of $900,000.00. Neither of these offers resulted in an executed purchase agreement between Paticopoulos and the Debtor. It appears that Marsh was not authorized to receive offers to purchase, nor to permit inspections of the interiors of the property.

In October, 1990 the Debtor did in fact transfer her interest in the Washington Place properties to Paticopoulos for $370,000.00. This purchase price was paid with a $6,000.00 down payment, satisfaction of outstanding city taxes totalling approximately $56,000.00, and the balance of the purchase price in promissory notes. It is undisputed that Paticopoulos defaulted on the underlying promissory notes, and this transfer was avoided by the Trustee in a subsequent compromise.

Based upon these facts, Roberts contends it is entitled to a commission of $139,000.00 for locating and procuring a ready and

willing buyer for the purchase of the Washington Properties. In opposition, the Trustee contends first that Roberts never obtained a listing agreement from the Debtor and the alleged oral agreement claimed by Roberts is unenforceable and is barred by the Statute of Fraud; second that the Debtor is not indebted to Roberts in any amount because there never existed an agreement by the Debtor to authorize Roberts to list the property or an agreement to pay Roberts a commission of 10% in connection with the sale of these properties; and, third, there is no persuasive evidence that there was ever a meeting of the minds between the Debtor and Roberts concerning terms of the sale and payment of real estate commission.

Roberts concedes, as it must, that it never obtained a written listing agreement from the Debtor for the sale of the Troy property but contends that under the applicable law of the State of New York, absence of a written listing agreement is no bar to recover real estate commission provided, of course, that there was, in fact, an agreement by the owner of the property to pay commission in the event the property is sold to a buyer procured by the broker. New York General Obligation Law 5–701(a)(10). This Statute exempts licensed real estate brokers from the requirements of the Statute of Frauds. See also *Blake–Veeder Realty, Inc. v. Crayford*, 110 A.D.2d 1007, 488 N.Y.S.2d 295 (3rd Dept.1985); *Fidelity Business Brokers, Inc. v. Gamaldi*, 190 A.D.2d 709, 593 N.Y.S.2d 315 (2nd Dept.1993).

Assuming, arguendo, that the claim of Roberts is controlled by the law of the State of Florida, its claim would only be barred by the Statute of Frauds if it was understood between the parties that the contract was not to be performed within one year from the time it was made, which, by the very nature of the transaction, was unlikely even if there was an agreement to pay commission. *Yates v. Ball*, 132 Fla. 132, 181 So. 341, 344 (1937); *Khawly v. Reboul*, 488 So.2d 856, 858 (Fla.3d DCA 1986).

■ There is no doubt that the authorities cited correctly represent the applicable legal principles. The problem is, however, that they apply only if there was a meeting of the

minds which, of course, is an indispensable element to an enforceable contract. *Dakin v. Grossman*, 57 A.D.2d 941, 395 N.Y.S.2d 81 (Sup.Ct.1977). In the case of *Julien J. Studley, Inc. v. New York News, Inc.*, 122 A.D.2d 633, 505 N.Y.S.2d 419 (1st Dept.1986), aff'd, 70 N.Y.2d 628, 518 N.Y.S.2d 779, 512 N.E.2d 300 (1987), the broker did procure the buyer and sought to recover commission from the owner. The court rejecting the claim held that he was acting as the purchaser's agent and was merely a volunteer and if the broker without a request from the owner brings a prospective purchaser and the latter, without further acceptance of the broker's services, accepts the offer made by the prospective purchaser, the broker is not entitled to a commission.

■ The case law in New York leaves no doubt that before a broker is entitled to a commission, it is the broker's burden to establish a prima facie case that (1) there was an agreement to pay commission, and (2) he procured a ready, willing and able buyer at the price and terms of the seller. *Lane–The Real Estate Dept. Store v. Lawlet Corp.*, 28 N.Y.2d 36, 319 N.Y.S.2d 836, 268 N.E.2d 635 (1971), rev'd, 33 A.D.2d 924, 307 N.Y.S.2d 494, reinstated, 28 N.Y.2d 36, 319 N.Y.S.2d 836, 268 N.E.2d 635; *Albert Bialek Associates v. Arden–Esquire Realty*, 110 A.D.2d 578, 487 N.Y.S.2d 794 (1st Dept.1985). In the case of *Naum v. Wiltsie*, 271 App.Div. 169, 63 N.Y.S.2d 578 (3rd Dept.1946) the Court stated that it is a well established general principle in New York that "a mere volunteer without authority is not entitled to a commission merely because he has inquired the price which an owner asked for his property, and then sent a person to him who consents to take it." The Court held that "an owner cannot be enticed into liability for commission against his will by a volunteer without authority." *Naum v. Wiltsie, supra.*

■ The testimony shows that Jan Albers (Ms. Albers), a principal with H.D. Roberts, actually was responsible for not only the initial contact with Mr. Paticopoulos, but subsequent contacts with Mr. Paticopoulos and preparation of the purchase offers. Ms. Carey testified that Ms. Albers allegedly was

present at meetings which Ms. Carey held with the Debtor. Ms. Albers' testimony, which might have corroborated the testimony of Ms. Carey concerning the existence of a listing agreement or its terms, was not presented to the Court either live or by deposition. Ms. Carey also testified at trial that Paul Marsh, a tenant at one of the Costello properties, was allegedly authorized by Ms. Costello to show the properties on several occasions to Ms. Carey. Ms. Carey also testified that she gave listing agreements to Mr. Marsh to give to Ms. Costello. Again, Paul Marsh was not presented to the Court as a witness to corroborate Ms. Carey's testimony. There is no explanation by Roberts why it did not present corroborating testimony either of Marsh or Ms. Albers. It is well established that the failure of a party to present evidence by way of corroborating testimony, evidence which is available, permits the inference that such testimony would be adverse and the truth would be damaging to the party who's testimony required corroboration. *In re Vidana*, 19 B.R. 787 (Bankr.S.D.Fla.1982).

Based on the foregoing, the totality of the evidence permits but one conclusion that the proof presented by Roberts in support of a binding agreement to pay commission falls far short of the degree of proof and the burden cannot be discharged by inference or alleged facts not supported by independent corroboration.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Objection to Claim # 11 is hereby sustained, and Claim # 11 is hereby disallowed.

DONE AND ORDERED.