JAMES C. AUCHINCLOSS and Others, as Copartners Doing Business under the Firm Name of AUCHINCLOSS, JOOST & PATRICK, Plaintiffs, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.

First Department, December 19, 1919.

**Principal and surety — when agreement indemnifying employer does not cover loss caused by hired messenger — " employee " defined — court cannot alter contract.**

A surety company which gave a bond to indemnify the plaintiffs against any loss arising through any dishonest act of any of the " employees " of the plaintiffs wherever committed and whether committed directly or

in collusion with others, is not liable for the defalcation of a messenger whom the plaintiffs hired by the day from a telegraph company maintaining messenger service, where the latter company hired and paid the messenger, who reported to it daily, and the plaintiffs paid for the service directly to the messenger's employer.

The word " employee " as used in the bond did not include any person who might work for the plaintiffs, but only those persons between whom and the plaintiffs the relation of employer and employee existed, which relation is contractual in its nature and one which would enable the employee to recover from the employer the agreed wages, or the reasonable value of the work performed, and also involves a right of the employer to discharge the employee for cause. These elements of contractual relation did not exist between the plaintiffs and the messenger whom they hired from the telegraph company.

The court is not authorized to extend the language used by the parties to the contract so as to cover acts not strictly within its terms.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Morgan J. O'Brien* of counsel [*Wilder Bellamy* with him on the brief; *O'Brien, Boardman, Parker, Harper & Fox*, attorneys], for the plaintiffs.

*Gilbert D. Lamb* of counsel [*James W. Osborne* and *Edmund J. Donegan* with him on the brief; *Leonidas Dennis*, attorney], for the defendant.

PAGE, J.:

The plaintiffs are stockbrokers having offices in the city of New York. The defendant is a surety company engaged in writing fidelity and surety bonds. On September 3, 1918, the defendant executed a fidelity bond, upon payment of a premium, based upon the total number of the " insured's officers, clerks and other employees, employed at the insured's offices covered hereunder." The bond contained a list of the plaintiffs' offices and the names of the employees severally employed therein. The bond also provided " all the officers, clerks and other employees employed at the offices covered hereunder during the currency of this bond being hereinafter referred to as employees." By the bond the defendant undertook and agreed to indemnify and save harmless the plaintiffs against

any loss not exceeding $50,000 of money, bonds and other securities, among other things, " through any dishonest act of any of the employees, wherever committed and whether committed directly or by collusion with others." The bond further provided that notice should be given to the defendant if plaintiffs desired any other offices to be covered, when an additional premium should be paid, but no notice of any increase in the number of employees at any of the offices covered by the bond was required to be given and no additional premium was to be paid.

Subsequent to the execution of the bond the plaintiffs' cashier telephoned to the New York District Telegraph Company (hereinafter referred to as the Telegraph Company) and asked it to send them a messenger, nothing being said as to the services desired of the messenger, or the length of time he was to be used. In compliance with this request the Telegraph Company sent to the plaintiffs William Lane, a man about forty years of age, who wore no uniform. (None of the Telegraph Company's messengers wore uniforms.)

This was the first time the plaintiffs had utilized the services either of the Telegraph Company or Lane. Lane on that day, and for several days thereafter, performed certain messenger duties for the plaintiffs in such a satisfactory manner that the plaintiffs' cashier directed him to report to the Telegraph Company that the plaintiffs desired his services regularly. Thereafter, on each business day, Lane reported at the office of the Telegraph Company and was sent by the Telegraph Company to the plaintiffs' office, which he reached about nine-thirty in the forenoon, and where he presented to the plaintiffs' cashier a slip, given him by the Telegraph Company, which had on it the Telegraph Company's name, the messenger's number, the hour called, which was stated at nine-thirty, blanks for the hour he returned and for the charge for such services. On each of these days Lane remained on duty at the plaintiffs' offices until such time as his services were no longer required. Lane, while at the plaintiffs' offices, performed such miscellaneous duties as the plaintiffs required, being from the time of reporting until the time of his dismissal entirely under the direction and at the service of the plaintiffs, subject always to the primary right

of the Telegraph Company to recall him or to subject his services to such restrictions as were warranted by the implied contract between the Telegraph Company and the plaintiffs, arising from the request and compliance therewith above stated. The nature of the duties assigned to Lane were not reported to the Telegraph Company by the plaintiffs. When dismissed for the day Lane received from the plaintiffs' cashier, properly filled out and signed, the slip he had presented in the morning and then returned to the office of the Telegraph Company where he reported and turned in the slip signed by the plaintiffs' cashier. The plaintiffs paid the Telegraph Company thirty cents an hour for Lane's services — the time being computed from the said signed slips — and the plaintiffs also voluntarily gave Lane fifty cents each working day.

On January 31, 1919, the plaintiffs delivered to Lane certain securities to be substituted for other securities (Liberty bonds and stocks) which were pledged with a certain bank and a certain firm of bankers, as collateral to loans; and in accordance with the practice among bankers the plaintiffs delivered to Lane a substitution order requesting the bankers to release those securities and substitute in their place the ones presented. Lane presented to the bankers the securities and order and received from them $7,000 par value of " Liberty bonds " but did not take the stock, stating that he would call again for it. He presented the securities and order to the bank and received $3,000. par value Liberty bonds from it. He did not report back to the plaintiffs and never made delivery of the said Liberty bonds to plaintiffs nor have they since discovered any trace of him or of the bonds, although diligent efforts have been made to do so. Plaintiffs gave due notice of their loss to the defendant on January 31, 1919, reporting the numbers of the bonds, and in all other respects complied with the terms of the bond.

The plaintiffs claim that Lane was their employee, in the sense in which that word is used in the bond and, therefore, that they sustained a loss of $9,666.40 (the market value of the Liberty bonds) directly covered by the bond.

The defendant on the other hand claims that Lane was not an employee within either the letter or spirit of the bond and

denies that the loss was such as the bond was intended to and did cover.

The sole question involved is whether Lane was an employee, within the meaning of the bond, for whose dishonest acts, causing loss to the plaintiffs, the defendant was responsible. The word " employee " is capable of very broad meaning and, therefore, is subject to restrictions and limitations arising from its use in conjunction with other words, or from the context of the contract or statute in which it appears.   Strictly and etymologically it means a person employed, but in practice and as generally used it is understood to indicate some permanent employment or position.   (Bouvier Law Dict. [Rawle's Rev.] 672; *Louisville, etc., R. R. Co.* v. *Wilson,* 138 U. S. 501, 508.) In the bond in this case the word is used not to designate a person employed in the offices of the plaintiffs, but is limited to those who are the plaintiffs' employees in their offices; that is, to those persons between the plaintiffs and whom the relation of employer and employee exists.   That relation is contractual in its nature.   One employs the other to do certain work or render certain service for which he actually or impliedly agrees to pay; and if he fails to do so, the employee can recover from the employer either the agreed wage or the reasonable value of the work performed or service rendered.   Furthermore the employer hires and has the right to discharge, for cause, the employee.   There was no contractual relation between the plaintiffs and Lane.   The plaintiffs' contract was with the Telegraph Company, whereby they were bound to pay an agreed sum for the services of a messenger.   Lane's contract was with the Telegraph Company whereby he bound himself for an agreed compensation to render services as a messenger.   If Lane did not receive his pay for the services he rendered, he had no cause of action against the plaintiffs; and if plaintiffs were dissatisfied with Lane they could not discharge him.   They could terminate the service that he was rendering to them but his contract with the Telegraph Company would still subsist in full force and effect.   He would not thereby be deprived of his right to his compensation from the Telegraph Company.   Lane reported every morning to the Telegraph Company and there received his directions to go to the plaintiffs' office; and the fact that he returned to the

Telegraph Company every afternoon, on leaving the plaintiffs' office, together with the fact that the plaintiffs paid for the service rendered, not to Lane but to the Telegraph Company, negatives the existence of any contract relation between the plaintiffs and Lane. The plaintiffs did not hire Lane. They hired the service which Lane was obligated to render to the Telegraph Company. Lane remained at all times the employee of the Telegraph Company. The fact that Lane performed the services for plaintiffs daily did not alter the original relation between him and the Telegraph Company. Who is the employer of a given employee is not determined by the frequency of the acts, but by the character of the work, by the extent to which the one for whom the work is done has the right of selection and direction, and by the answer to the question upon whom rests the obligation to pay the employee directly for the service. The relation would be just as well established by a single service. If Lane was an employee within the terms of this bond then any other messenger that the plaintiffs called in for a single service was also within the terms of the bond. (*Catlin* v. *Peddie,* 46 App. Div. 596, 598.) That it was the intention of the parties to insure the fidelity of the permanent employees of the plaintiffs appears from the phrase defining the word employees as used in the bond, to wit: " All the officers, clerks and other employees employed at the offices covered hereunder during the currency of this bond being hereinafter referred to as employees." It is a well-settled rule of construction in seeking the intent of the parties, where certain things are enumerated coupled with a more general description, such general description is commonly understood to cover only things *ejusdem generis.* (*Matter of Robinson,* 203 N. Y. 380, 386; *Lantry* v. *Mede,* 127 App. Div. 557, 560.) Applying this rule it seems clear that the " other employees " are of the same class as clerks, and where it is thereafter stated that the liability of the defendant for loss of the plaintiffs through any dishonest act of any employee, it is meant any employee in the permanent office force of the plaintiffs.

The learned counsel for the plaintiffs relies upon cases under the Workmen's Compensation Law, and cases for personal injuries sustained through the negligent act of an employee

of a general employer, who was engaged in the business of and subject to the direction and control of a special employer. (*Carr* v. *Burke*, 183 App. Div. 361; *Matter of De Noyer* v. *Cavanaugh*, 221 N. Y. 273; *Hartell* v. *Simonson & Son Co.*, 218 id. 345; *Howard* v. *Ludwig*, 171 id. 507; *Wyllie* v. *Palmer*, 137 id. 248.) In these classes of cases the liability does not depend upon the contractual relation of employer and employee, but rather upon the question whose work was being done at the time of the injury. The actual existence of the relation of master and servant is unnecessary to sustain a recovery by a third person for personal injuries arising from negligence, so long as it appears that the subordinate was doing something for the superior from which the superior expected to derive an advantage; and under the Workmen's Compensation Law either the general master or the special master or both may be held liable, depending on whose business the workman was employed in at the time he was injured. (*De Perri* v. *Motor Haulage Co., Inc.*, 185 App. Div. 384, 390; *Matter of Dale* v. *Saunders Bros.*, 218 N. Y. 59; *Matter of Nolan* v. *Cranford Co.*, 219 id. 581; *Matter of De Noyer* v. *Cavanaugh, supra.*) Therefore, these cases cannot be considered as applying to the case under consideration.

We are not authorized to extend the language used by the parties as defined and limited by the instrument itself to cover indemnity for the acts of others not strictly within its terms. (*Richardson* v. *County of Steuben*, 226 N. Y. 13, 19.)

We find that Lane was not an employee of the plaintiffs within the intent and meaning of the bond and grant judgment for the defendant against the plaintiffs, with costs.

Clarke, P. J., Dowling, Merrell and Philbin, JJ., concur.

Judgment ordered for defendant, with costs. Settle order on notice.