(June 21, 1983)

■ 175 CHECK CASHING CORP., Respondent, v CHUBB PACIFIC INDEMNITY GROUP et al., Appellants. — Order, Supreme Court, Bronx County (Alfred J. Callahan, J.), entered February 2, 1982, granting reargument to the extent of recalling and modifying an earlier order which had granted defendant's cross motion for summary judgment dismissing plaintiff's second cause of action, affirmed, with costs. We are in agreement with the determination at Special Term that a factual issue exists as to the employment status of Grauso, which should not be resolved upon the conflicting affidavits adduced. Grauso claimed that he was not an employee and did not work for 175 Check Cashing Corp. This was supported by Levine, an employee of plaintiff, who likewise denied that Grauso was an employee or that he ever went inside the caged area where employees worked. The record does not reflect whether Levine was a "disinterested witness," as is characterized by the dissent. All that appears in the record is that he was a former employee of the plaintiff. His credibility and any interest or bias are matters for the trier of the facts. Levine's account, however, was refuted by Joseph Lieto, an employee of American Express Company, who stated that he had dealings with plaintiff and, in particular with Grauso, who represented himself to be an employee and manager of the plaintiff. Lieto observed Grauso, at various times, inside the caged area and at the company safe, performing work tasks, like any other employee, dealing with instruments, money orders and checks. Although Grauso had apparently contemplated the purchase of a stock interest in the corporation, according to Lieto, Grauso indicated to him that he would continue as manager-employee. In support of the motion to renew, Lieto specifically stated, immediately preceding the sentence quoted by the dissent: "LEONARD GRAUSO had stated to me that he was an employee of 175 CHECK CASHING CORP. and he had all the indicia of an employee including handling various funds and instruments, including having available to him and having access to the American Express money orders. LEONARD GRAUSO represented himself to be an employee and was acting in the capacity as manager of the premises at the times that I was dealing with him at the premises. I was also advised by Grauso that he was going to be a purchaser of a stock interest in the 175 CHECK CASHING CORP. and he was to continue as a manager in the premises." Jose Matos, plaintiff's president, confirmed that Grauso had undertaken to manage the facility and would remain in that capacity after he became a stockholder. Nevertheless, according to Matos, plaintiff retained the right to govern and direct Grauso's performance as an employee. Matos also stated that, inasmuch as Grauso was with plaintiff for a limited time, from June 22 to July 5, 1979, he was not employed long enough for a W-2 form to have been prepared, and any wages to have been paid to him were offset against the amount alleged to have been stolen. Under the circumstances, there are sufficient factual issues concerning the employment status of Grauso to warrant a trial, especially in view of the conflicting affidavits herein. Both sides have submitted carefully tailored affidavits, clearly designed to promote the respective positions which each has assumed. The credibility and interest of the parties, however, Levine and Grauso on the one hand, and Matos and Lieto on the other, is not a matter to be resolved summarily. The factual issue should properly await resolution at trial. In concluding otherwise, the dissent has credited one account offered by the insurer to the exclusion of the conflicting version by plaintiff's president, who claims that Grauso, as an employee, managed the operation while he was in Puerto Rico. While conceding that Grauso may have held a managerial role, our dissenting colleagues nevertheless conclude that he was not an employee

within the coverage of the policy. To the contrary, the terms are not mutually exclusive. Whether Grauso satisfied the insurance definition of the term "employee" is a matter susceptible to proof at trial. This is particularly so if one takes into account that, from the nature of the business, it is conceivable that only employees entrusted to handle funds and checks would normally be found within the enclosed cage area, where Grauso was seen working in conjunction with other employees. Likewise of a factual nature is the sufficiency of the proof with respect to the occurrence of the theft and the amount of the loss. Matos, in an affidavit submitted on the original motion, supported by the sworn proof of loss filed with the insurer, attested to the occurrence of the theft, the period of time during which the loss occurred, and the amount which comprised the loss in the total sum of $90,481.35, including the fact that the theft was reported to the Bronx District Attorney. Whether there was a loss resulting from an insured event within the coverage of the policy and the amount of any such loss are factual issues, inappropriate for resolution summarily, particularly on the contradictory proof adduced on this record. The operative standard on a motion for summary judgment is issue finding, not issue determination (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404; *Esteve v Abad*, 271 App Div 725, 727). We disagree with the fact-finding analysis of the dissent. The determination of whether a person falls within the policy definition of "employee" depends upon whether the proof satisfies the three-pronged test, namely, that the person (1) be compensated by the insured in the form of wages, salary, commissions or otherwise; (2) remain subject to the direction and control of the insured in terms of performance of duties; and (3) not be a broker, agent, factor, commission merchant, consignee or contractor, or other general agent (see *Fortunoff Silver Sales v Hartford Acc. & Ind. Co., a Part of Hartford Ins. Group*, 92 AD2d 880, mot for rearg and lv to app den NYLJ, May 27, 1983, p 13, col 1; *Gross Veneer Co. v American Mut. Ins. Cos.*, 73 AD2d 1028, 1029). Concur — Murphy; P. J., Kupferman and Kassal, JJ.

Fein and Alexander, JJ., dissent in a memorandum by Fein, J., as follows: Plaintiff is in the business of cashing checks and selling money orders and food stamps. Defendants issued to plaintiff a policy of employee fidelity insurance. It is alleged that during the summer of 1979 plaintiff suffered a loss by embezzlement at the hands of individuals named Grauso and Blecher, among others. While it is conceded that Blecher was an employee of plaintiff, the claim involving Grauso was rejected on the ground that he was not an employee, and thus his acts were not covered by the policy. The policy covers "direct losses of Money, Food Stamps, checks and other property caused by Theft or forgery by any identifiable Employee(s) of any Insured acting alone or in collusion with others." An "employee" is defined in the policy as a person "in the regular service of any Insured in the ordinary course of the Insured's business during the term of this policy and whom any Insured compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service". On the motion and cross motion for summary judgment, defendants submitted an affidavit by Grauso in which, in addition to denying the commission of any wrongful acts, he swore that he was never employed by plaintiff, never did any work for plaintiff, was never requested to do any work for plaintiff, and was never compensated by plaintiff in any fashion. In plaintiff's behalf was an affidavit by plaintiff's president which, while acknowledging that he was not present at the time of Grauso's alleged employment or at the time of the alleged theft, contradicted Grauso by stating in conclusory fashion that Grauso had been employed by plaintiff "for a very short period of time", performing the customary duties of handling cash,

checks, money orders, food stamps, etc., during which time he perpetrated the alleged theft in concert with employee Blecher. Plaintiff's president asserted that Grauso was not employed long enough for wages to have been paid or W-2 forms to have been issued. The only proof of Grauso's employment offered by plaintiff was the assertion that Grauso failed to deny his presence on the premises or explain the purpose of his presence at the time of the alleged loss. Completely lacking was any affidavit or other proof as to who hired Grauso, when he was hired and on what terms. The only affidavit from a disinterested source was that of Levine, an employee during this same period of time who stated that employees operated within a caged enclosure, and that during the period in question he occasionally saw and was introduced by Blecher to Grauso who was there to cash checks, but he never saw Grauso go inside the caged area where the employees worked. Nor did Levine ever see Grauso working or giving supervisory instructions on the premises. In initially denying plaintiff's motion for summary judgment and granting defendants' cross motion for summary judgment, Special Term ruled that plaintiff had failed to establish (1) Grauso's employment (noting Levine's affidavit that Grauso had never even had access to the moneys allegedly stolen), (2) a theft, (3) the amount of loss, and (4) the Grauso-Blecher connection. Plaintiff's motion for reargument was supported solely by an affidavit of one Lieto, an American Express employee who had conducted business with plaintiff and had supposedly been informed by Grauso that he was an employee, manager and prospective purchaser of stock in plaintiff, and that Lieto had actually observed Grauso "performing various work upon the premises in relation to the activities of [plaintiff] in the same manner and in the same mode as other employees". Lieto further stated: "I was also advised by Grauso that he was going to be a purchaser of a stock interest in the 175 CHECK CASHING CORP. and he was to continue as a manager in the premises." Lieto added that he had met with Grauso "behind the cage at the location of the company safe", where Grauso "had access to * * * money orders as only an employee of the firm would." Based upon this affidavit, Special Term granted reargument and denied defendants' cross motion for summary judgment, ruling that plaintiff had now established the existence of an issue of fact as to Grauso's employment status with plaintiff. The motion before Special Term, containing new evidentiary material in an additional affidavit, was more properly a motion to renew than to reargue (*Foley v Roche,* 68 AD2d 558; *Turkel v I.M.I. Warp Knits,* 50 AD2d 543). Plaintiff failed to explain why this so-called new evidence was not presented on the original summary judgment motion. On this ground alone the motion to reargue or renew should have been denied (see *Foley v Roche, supra; Matter of Fahey v Whalen,* 54 AD2d 1097, 1098, app dsmd 41 NY2d 900). This conclusory statement of a customer of plaintiff on the renewal motion fails to raise a triable issue as to whether Grauso was an employee of plaintiff. It does not show that Grauso came within the clearly defined criteria for employment as spelled out in the policy. At best for plaintiff, the most that can be gleaned from the affidavits is that Grauso assumed some kind of managerial role in connection with his prospective purchase of stock in the corporation. This did not make him an employee within the meaning of the policy. This is plainly demonstrated in the affidavit of plaintiff's president Matos on the motion to reargue, wherein he states: "Mr. Grauso did undertake to purchase a stock interest in the Corporation and was to continue as a manager of the Corporation * * * Mr. Grauso was acting as a manager at the premises pending the formalization of his stock purchases in the Corporation which stock purchase was to take place over a period of years based upon a pay out procedure." Plainly even on this basis, Grauso was not engaged "in the regular service" of

the plaintiff "in the ordinary course of the Insured's business during" the period of the alleged loss, as required by the policy. There is no proof Grauso was engaged "in the regular service" of plaintiff. Nor is there a shred of evidence, even on reargument, that Grauso had been or was to be compensated by "salary, wages and/or commissions" by the plaintiff, also a requisite under the policy. The two cases cited by the majority demonstrate the need for proof that Grauso was "(1) compensated by the insured by salary, wages or commissions and (2) * * * subject to the insured's right to govern and direct at all times in the performance of his duties" (*Fortunoff Silver Sales v Hartford Acc. & Ind. Co., a Part of Hartford Ins. Group,* 92 AD2d 880, 881; *Gross Veneer Co. v American Mut. Ins. Cos.,* 73 AD2d 1028, 1029). Those cases turned on the question of who paid the employee and who managed him. Here there is no proof anyone hired or paid Grauso or agreed to do so and no proof anyone managed him. It is well settled that the language of such a policy cannot be extended to cover situations not clearly covered by it (*Auchincloss v United States Fid. & Guar. Co.,* 190 App Div 6). Moreover, even on renewal, plaintiff failed to satisfy other defects Special Term had earlier properly found in plaintiff's case, namely, plaintiff's complete failure to show that a theft occurred, that Grauso was involved in it and the amount of the alleged loss. This lack was noted by Special Term in denying the original motion. It was not addressed in the moving papers on the motion to reargue, nor in the court's decision on such motion. It is nonetheless fatal. It has long been settled that a party opposing a motion for summary judgment must "assemble, lay bare and reveal his proofs, in order to show that the matters set up in his [pleadings] are real and are capable of being established upon a trial." (*Di Sabato v Soffes,* 9 AD2d 297, 301.) In short a triable issue must be raised to defeat a motion for summary judgment. On this record, by any objective standard plaintiff has failed to raise a triable issue, sufficient for a prima facie case. There were insufficient grounds to disturb Special Term's prior ruling granting summary judgment to defendants. The order Supreme Court, Bronx County (Alfred J. Callahan, J.), entered February 2, 1982, granting reargument to the extent of recalling and modifying a prior order so as to deny defendants' previously granted cross motion for summary judgment dismissing plaintiff's second cause of action should be reversed, on the law, the motion denied and the original order granting defendants summary judgment should be reinstated, with costs.