■ SOFIA WILLNER et al., Doing Business as APARTMENTS PLUS, et al., Respondents, v JOANNA CUTLER, Appellant. (Action No. 1.) JOANNA CUTLER, Plaintiff, v LEONARD KAYE et al., Appellants. (Action No. 2.)—Order, Supreme Court, New York County (Harold Baer, Jr., J.), entered September 23, 1985, which, *inter alia,* granted plaintiffs-respondents' cross motion to consolidate action No. 1, *Willner v Cutler,* and action No. 2, *Cutler v Kaye,* to the extent of directing a joint trial, and denied defendant-appellant Cutler's cross motion for summary judgment dismissing the complaint in action No. 1, reversed, on the law, defendant-appellant Cutler's cross motion for summary judgment is granted, the complaint in action No. 1 is dismissed, and action No. 2 is dismissed as moot, with costs.

Action No. 1 and action No. 2 arise out of a dispute relating to a real estate broker's commission for the May 1984 sale of a townhouse located at 17 East 66th Street in Manhattan. The owner, Leonard Kaye (defendant-appellant in action No. 2), through the efforts of Joanna Cutler (defendant-appellant in action No. 1 and plaintiff in action No. 2), a New York licensed real estate broker, sold his townhouse to Paul Guez, acting on behalf of Sasson Jeans, Inc. (impleaded defendant-appellant in action No. 2).

The instant townhouse had been for sale since 1981 when it was listed on an exclusive basis with one broker. As of 1982, however, it was listed on an open and nonexclusive basis with several brokers, including Sofia Willner and Lynn Laud, doing business as Apartments Plus, and Ellen Josif, doing business as Ellen Josif Realty (plaintiffs-respondents in action No. 1). In January 1984, Cutler met Kaye through a mutual friend and obtained the nonexclusive listing for the Kaye property. In March 1984, Cutler introduced Kaye to Guez, and in May 1984, the sale of the townhouse was consummated.

The instant dispute arises out of an alleged oral agreement between the plaintiff brokers in action No. 1 and Cutler. In December 1983, Apartments Plus prepared a listing sheet for one of Cutler's clients, one Mrs. Matzner. The listing sheet contained four properties, including the Kaye townhouse. Josif had an agreement with Apartments Plus to share the brokerage commission from the sale of any of the properties on the listing sheet to Mrs. Matzner. In addition, Josif and Cutler had their own cobrokerage agreement relating to sales from this listing sheet to Mrs. Matzner. Mrs. Matzner was never shown the Kaye property nor did she purchase it.

The plaintiff brokers commenced action No. 1 claiming that they were entitled to a share of Cutler's brokerage commission resulting from the Kaye townhouse sale. They contend that there was an oral agreement with Cutler to share said brokerage commission, if Cutler were to make the sale to anyone. This, they claim, is supported by the December 1983 agreement concerning brokerage commissions relating to the sale of any of the four listed properties to Mrs. Matzner.

Cutler commenced action No. 2 against Kaye to recover the commission of 6% of the gross sales price, equal to $318,000 plus interest, earned from the sale of the Kaye townhouse. Kaye cross-claimed against Sasson Jeans, Inc. because the May 10, 1984 contract of sale provided that the purchaser agreed to pay the broker's commission.

Special Term consolidated the two actions directing that a joint trial be held and, *inter alia,* denied Cutler's motion for summary judgment. We reverse.

Unless otherwise agreed, a real estate broker's commission is earned when the broker produces a buyer that is ready, willing and able to consummate the purchase at the seller's terms. *(Rusciano Realty Servs. v Griffler,* 62 NY2d 696, 697, citing *Lane—Real Estate Dept. Store v Lawlet Corp.,* 28 NY2d 36, 42; *Wagner v Derecktor,* 306 NY 386, 390; *Blackmore v Wigne Land Corp.,* 97 AD2d 889.) It is clear that Cutler was the procuring broker for the sale of the Kaye townhouse to Sasson Jeans, Inc. Guez, on behalf of Sasson Jeans, Inc., was a ready, willing and able buyer brought to Kaye by Cutler. Because of her brokerage efforts, both buyer and seller agreed to the essential terms of the contract of sale, which entitled Cutler to the commission therefrom. *(See, Sibbald v Bethlehem Iron Co.,* 83 NY 378, 381; *see also, Williamson, Picket, Gross v Hirschfeld,* 92 AD2d 289.)

We do not find any merit in plaintiff brokers' contention

that there was an oral agreement to share in the instant commission. While it is undisputed that an agreement to share in commissions existed, that agreement related to a specific client, Mrs. Matzner, and no one else. It was Cutler who produced Guez to Kaye, not plaintiff brokers. Plaintiff brokers are not entitled to the commission for merely bringing the Kaye listing to the attention of Cutler, the procuring broker. Cutler was the "direct and proximate link * * * between the bare introduction and the consummation" *(Greene v Hellman,* 51 NY2d 197, 206).

Not only is there no evidence to support the existence of the alleged oral agreement, but there is no evidence to suggest that Guez and Kaye intended to benefit plaintiff brokers in the consummation of the sale. *(See, e.g., Fourth Ocean Putnam Corp. v Interstate Wrecking Co.,* 108 AD2d 3, 6-7.)

Kaye and Sasson Jeans, Inc. do not dispute the May 10, 1984 contract nor that, pursuant thereto, Sasson Jeans, Inc. agreed to pay the real estate brokerage commission. As such, Cutler is entitled to the full commission from Sasson Jeans, Inc. Concur—Kupferman, J. P., Sullivan, Ross and Carro, JJ.

Fein, J., dissents in a memorandum as follows: I would affirm for the reasons stated by Justice Harold Baer, Jr. Plaintiffs plainly allege an oral agreement with Cutler to divide commissions which might be earned upon the sale of the Kaye property. Cutler alleges that there was no such agreement. She asserts that plaintiffs' claim is based solely on the fact that a "listing sheet" containing a description of the property was given to Cutler by plaintiffs.

The majority concedes that an agreement to share commissions existed. However, it finds that agreement related only to a specific client, Mrs. Matzner, and no one else. That conclusion is premised upon weighing the affidavits and deposition testimony of the persons involved. There is no writing which points in any direction.

It is undisputed that it was Cutler and not plaintiffs who introduced the purchaser to Kaye. However, that is not determinative. Plaintiff brokers do not claim a right to split commissions for merely bringing the Kaye listing to the attention of Cutler, the procuring broker. They assert that at the time it was brought to her attention, there was an agreement to split commissions. At that time the Kaye townhouse was listed with plaintiffs on an open and nonexclusive basis. The alleged fact that Cutler later obtained an open and nonexclusive listing from Kaye is not dispositive.

Thus there is a triable issue of fact as to the nature of the agreement, as Special Term held. However much we may doubt that plaintiffs' claim can be proved, that is not a basis for granting summary judgment against them. On a motion for summary judgment the function of the court is issue finding, not issue determination *(Epstein v Scally,* 99 AD2d 713; *Esteve v Abad,* 271 App Div 725). If there is a material issue of fact, the motion must be denied *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395).

We are not to weigh the credibility of the affiants *(Glick & Dolleck v Tri-Pac Export Corp.,* 22 NY2d 439; *Cross v Cross,* 112 AD2d 62, 64; *175 Check Cashing Corp. v Chubb Pac. Indem. Group,* 95 AD2d 701, 702). There simply is no writing either way. There are affidavits of Willner, Josif, and Cutler, and portions of their depositions. Each gives a different version of the conversation upon which plaintiffs rely. There is a patent issue of credibility which can only be resolved upon a trial.