(May 19, 1987)

■ DOUBLE A LIMOUSINE SERVICE, LTD., Appellant, v NEW YORK, NEW YORK LIMOUSINE SERVICE, INC., et al., Respondents.—Order, Supreme Court, New York County (Harold Baer, Jr., J.), entered May 1, 1986, which denied the plaintiff's motion for a preliminary injunction, and granted the defendants' motion for summary judgment to dismiss the complaint, is unanimously modified, on the law and on the facts, to the extent of denying defendants' motion, without prejudice to either party moving on proper papers for appropriate relief, reinstating the complaint, and except as thus modified, otherwise affirmed, without costs.

New York, New York Limousine Service, Inc. (New York Limousine), a New York corporation, was operated as a private livery service, which allegedly catered, under contract, to specific clients and hotels. It had an office located at 149 West 27th Street, New York County.

On or about June 14, 1985, New York Limousine and Double A Limousine Service, Inc. (Double A) entered into a contract, pursuant to which Double A purchased for $79,000, in substance, New York Limousine's rolodex, customer list, and telephone number. The payment terms consisted of $10,000 in cash, and $69,000 in promissory notes, payable over a 36-month period, commencing July 14, 1985. Paragraph 9 of the contract of sale reads as follows: "No oral statement or prior written document shall have any force or effect. Purchaser [Double A] has inspected and is familiar with the condition of the assets being purchased, and hereby declares he is buying the rolodex and customer list on his own judgment and not relying upon any statements or representations made by seller [New York Limousine] as to the character, condition or quality or as to the past, present or prospective income or profits which may be derived therefrom".

In or about November 1985, Double A commenced the instant action against New York Limousine, and individuals Ms. Dianne Commacho (Ms. Commacho), Mr. Joseph Commacho (Mr. Commacho), Mr. Jim White (Mr. White), and Ms. Carol White (Ms. White), who are allegedly affiliated with New York Limousine, for such relief as rescinding the subject contract, permanently enjoining these defendants from accelerating and collecting any further payments owed by plaintiff, and punitive damages. The verified complaint alleges, in substance, that the sales register and diary of New York Limousine were fraudulent, in that after plaintiff purchased the

business, plaintiff only received one third of the volume of sales from what had been indicated in New York Limousine's sales register and diary. Also, by order to show cause dated November 27, 1985, plaintiff moved to preliminarily enjoin defendants from accelerating the payments, mentioned, *supra*.

Thereafter, defendants served answers, which, in substance, denied the allegations, and asserted affirmative defenses and counterclaims.

Subsequently, as the parties were preparing to undertake discovery, the IAS court denied plaintiff's motion for a preliminary injunction, and granted the oral motion of defendants, New York Limousine, Mr. White and Ms. White, for summary judgment dismissing the complaint.

We disagree.

It is hornbook law that the "function of summary judgment is issue finding, not issue determination *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Allied Control Co. v C. F. A. Graphics,* 43 AD2d 678; *175 Check Cashing Corp. v Chubb Pac. Indemn. Group,* 95 AD2d 701)" *(Pantote Big Alpha Foods v Schefman,* 121 AD2d 295, 296-297 [1st Dept 1986]). Furthermore, we have held that "[s]ummary judgment is a drastic remedy and should not be invoked where there is any doubt as to the existence of a triable issue *(Moskowitz v Garlock,* 23 AD2d 943, 944)" *(City Univ. v Finalco, Inc.,* 93 AD2d 792, 793 [1st Dept 1983]).

We are aware

"of the crushing volume of motions * * * with which a Justice presiding over a civil part under the individual assignment system is confronted * * *

"At the same time, however, fundamental rights to which a litigant is entitled, including the opportunity for appellate review of certain orders, cannot be ignored, no matter how pressing the need for the expedition of cases" *(Matter of Grisi v Shainswit,* 119 AD2d 418, 421 [1st Dept 1986]; *see also, Herbert v City of New York,* 126 AD2d 404 [1st Dept 1987]).

Applying the principles of the legal authority, cited *supra,* we find the record before us insufficient to justify the IAS court's virtual *sua sponte* grant of summary judgment, since, among other things, the IAS court erroneously disregarded the fact that defendants did not base their motion for such relief upon the submission of proper papers, as required by CPLR 2214 and 2215.

Accordingly, we modify the IAS court order, and deny the defendants' motion for summary judgment, without prejudice

to either party moving, on proper papers, for such relief as the parties may deem appropriate. Concur—Murphy, P. J., Ross, Kassal and Wallach, JJ.

Kupferman, J., concurs separately in a memorandum as follows: As Chief Judge Sol Wachtler stated in his State of the Judiciary address, on February 24th:

"The Individual Assignment System (IAS) is a method of case processing by which the judge assigned to a case at its inception handles the case exclusively to its conclusion. No longer are cases heard piecemeal by a succession of different judges as occurred under the former master calendar system. Under the IAS, our goals are that every appearance of litigants or attorneys before a judge will contribute meaningfully to the progress of the case to disposition, that effective legal services and caseload and information management services will be delivered to judges, that all actions will reach disposition within a reasonable period of time, and that the quality of judicial decisions will be enhanced by greater familiarity of judges with the facts and issues in cases assigned to them.

"The Individual Assignment System also improves the ability of judges to give measured, efficient consideration to matters assigned to them and permits more effective processing of cases at each stage in a manner that promotes public confidence in the courts. Flexibility has been built into IAS in order sensibly to take account of local or individual practices and of special or extraordinary circumstances."

While I concur in the determination because there is a gap in the information available to us in order to decide on appeal the question of summary judgment, I believe the court goes too far in its analysis of the IAS court approach.

If the IAS system is to cut through the various technicalities which help to clog the judicial process, the procedure by the IAS Judge in this case was not only proper but also desirable.

We, however, have a different function, which is to analyze the result in terms of legal adequacy and, therefore, we require a record in order to make a determination. Accordingly, we should ask that, after the IAS court has made its determination, for the purpose of appeal, there should be a record approved by the court "reflecting the respective positions of the parties on the particular issue" (Matter of Grisi v Shainswit, 119 AD2d 418, 422).

To the extent that the approach of IAS presents a conflict with the appellate process, the Office of Court Administration should consider proposals to bring them into harmony.