■ JAMES GREEN, Appellant, v FISCHBEIN, OLIVIERI, ROZENHOLC & BADILLO, et al., Respondents.—Order of the Supreme Court, New York County (Andrew Tyler, J.), entered on March 10, 1987, which granted defendants' motion to amend their answer pursuant to CPLR 3025 (b) and for partial summary judgment dismissing the second and fourth causes of action in the second amended complaint, is reversed on the law and the motion denied in full, with costs and disbursements.

Order of the Supreme Court, New York County (Andrew Tyler, J.), entered on March 5, 1987, which denied without prejudice to renew plaintiff's motion to disqualify defendant law firm as attorneys for defendant David C. Walentas, is affirmed, without costs or disbursements.

This court has already had occasion to consider the instant action in connection with defendants' motion to dismiss for legal insufficiency pursuant to CPLR 3211 (119 AD2d 345). At issue now is defendants' motion for summary judgment under CPLR 3212, as well as defendants' request to amend their answer to interpose a defense of the Statute of Limitations and plaintiff's application to disqualify defendant law firm, Fischbein, Olivieri, Rozenholc & Badillo, from continuing to represent codefendant David C. Walentas.

The case arises out of an alleged campaign of harassment against plaintiff James Green undertaken by Walentas and the latter's attorneys. In that regard, plaintiff was a tenant in a building located at 180 West 58th Street in Manhattan which was purchased by Walentas in 1979. Shortly after acquiring the premises, Walentas began a cooperative conversion process with defendant law firm acting as his counsel. A tenants' association, of which plaintiff was an active member,

was formed to respond to the proposed conversion and the purported diminution of services. Several years of litigation ensued between the tenants and the landlord, and, in 1983, the tenants' association succeeded in having the original eviction plan annulled *(Alwyn Ct. Tenants' Assn. v Walentas, 59 NY2d 652)*. It is claimed that prior to that determination, Walentas, advised and supported by his lawyers, engaged in a concerted course of conduct designed to harass, intimidate and interfere with plaintiff's tenancy. According to plaintiff, he became the object of numerous court actions, including a series of apparently meritless eviction proceedings which were decided against Walentas. In one of these eviction proceedings, the landlord had contended that plaintiff was a squatter or an intruder on the premises; in the next proceeding, the allegation was that plaintiff's mother was improperly permitting him to use the subject apartment; then Walentas charged that plaintiff was wrongfully allowing others to occupy the apartment. In the third case, the court dismissed the action on the ground of res judicata in that the complaint therein had been predicated upon the same claim upon which the prior hold-over proceeding had been based. Moreover, plaintiff was one of those members of the tenants' association sued by Walentas for abuse of process arising out of the tenants' commencement of an action relating to repairs and services in the building. The abuse of process action was also dismissed. Codefendant law firm represented Walentas in all of the foregoing matters.

Plaintiff states that in addition to being inundated with a stream of litigation, Walentas and/or others acting under his direction and control subjected plaintiff and his guests to assorted abuse, including interference with the receipt of mail and packages and the interruption or cessation of apartment services. Further, it is alleged that on numerous occasions, plaintiff was informed by building employees that Walentas had expressed his intention to force him out of the premises. All of the foregoing actions and conduct by Walentas, plaintiff asserts, caused him to suffer extreme emotional anxiety and depression and created unremitting turmoil in both his personal and professional life.

Subsequent to the voiding by the Court of Appeals of defendant landlord's earlier declaration of effectiveness of the eviction conversion plan, the Attorney-General of the State of New York authorized Walentas to effect a number of modifications in his proposal by means of an eleventh amendment. Among these changes was a financial buy-out offer to those tenants who elected to vacate the building, an offer which

plaintiff accepted. In August of 1985, he entered into a written contract with all of the defendants herein pursuant to which he agreed to surrender his apartment in exchange for the sum of $78,000. The law firm was to hold the money in escrow, and plaintiff was to vacate the premises in "broom clean" condition on or before May 12, 1984, after giving 15 days' notice of the precise date of surrender. However, while plaintiff moved out on May 1, 1984, having paid all rent through April 30, 1984, the landlord, and the law firm as escrow agent, tendered only $76,000 and withheld $2,000 on the ground that the apartment was not "broom clean", that plaintiff had failed to provide the requisite notice and that the May 1984 rent had not been remitted.

Plaintiff immediately returned the $76,000 and commenced the present action for breach of contract and in tort. Plaintiff moved for partial summary judgment on the first cause of action, and defendants cross-moved to dismiss the complaint for legal insufficiency. The Supreme Court granted plaintiff's motion to the extent of holding that he was entitled to $76,000 and granted defendants' cross motion to the extent of directing plaintiff to serve an amended complaint. The court found questions of fact with respect to the remaining $2,000. Plaintiff then served an amended complaint setting forth 14 causes of action. Defendants again moved to dismiss for legal insufficiency, and the Supreme Court dismissed all causes except the first for breach of contract, the fifth seeking plaintiff's expenses and attorney's fees in bringing the lawsuit, the tenth insofar as it claimed retaliatory eviction, the eleventh for intentional infliction of mental and emotional distress and the twelfth for breach of the warranty of habitability. On appeal, this court modified to the extent of dismissing the tenth and twelfth causes of action against defendant law firm and otherwise affirmed. In sustaining the cause of action relating to the intentional infliction of mental and emotional distress against Walentas' legal counsel, as well as the landlord himself, we asserted (supra, at 350-351): "It is undisputed that the firm represented Walentas in these four eviction proceedings and other legal proceedings during the conversion process. If plaintiff can show, as he alleges, that there was no legal basis for these proceedings, the law firm may not take refuge behind the attorney-client relationship to insulate itself from liability. It is plain that an attorney may be held liable to a nonclient 'as a consequence of the attorney's wrongful or improper exercise of authority, or where the attorney has committed fraud or collusion or a malicious or tortious act' (Singer v

*Whitman & Ransom,* 83 AD2d 862, 863). As stated in *Newberger, Loeb & Co. v Gross* (563 F2d 1057, 1080, *cert denied* 434 US 1035), 'Under New York law an attorney generally cannot be held liable to third parties for actions taken in furtherance of his role as counsel unless it is shown that he "did something either tortious in character or beyond the scope of his honorable employment." * * * Thus, while an attorney is privileged to give honest advice, even if erroneous, and generally is not responsible for the motives of his clients, admission to the bar does not create a license to act maliciously, fraudulently, or knowingly to tread upon the legal rights of others.' "

Following this court's decision, a two-day "partial" examination before trial of plaintiff was conducted. During the time that the appeal had been pending, defendants had moved for partial summary judgment (denied without prejudice because of the pendency of the appeal), and defendants now revived their request for partial summary judgment. In that regard, defendants urged that plaintiff could not demonstrate that he had suffered emotional injuries but that, at any rate, even if true, the purported wrongful conduct did not constitute the tort alleged. Defendant law firm also denied, for the first time, that it had been Walentas' counsel in the first two eviction attempts, notwithstanding the fact that these proceedings were brought in the name of Kenneth G. Schwarz, now a partner in the firm. Meanwhile, this court had already determined that defendant firm had "represented Walentas in these four eviction proceedings and other legal proceedings during the conversion process" *(supra,* at 350). At the same time, defendants, some 2½ years after their original answer and a year after submitting their answer to the second amended complaint, moved to amend their answer in order to interpose the defense of Statute of Limitations.

In granting defendants' motion for summary judgment dismissing the second (formerly denominated as the fifth cause of action) and the fourth (formerly designated as the eleventh cause of action) causes of action, the Supreme Court concluded that "[t]he claims of intentional tort and wrongful infliction of emotional harm are tenuous at best, and nowhere in the papers opposing this motion do plaintiff's assertions of outrageous conduct directed against him on the part of defendants rise above mere conclusions *(McGagee [sic] v. Kennedy,* 48 NY2d 832). Nor does plaintiff show by evidentiary facts that his claim is real, and can be established on a trial *(Indig v. Finkelstein,* 23 NY2d 728)." The court also granted permission

to defendants to amend their answer since "[s]uch leave should be freely given absent prejudice". Moreover, shortly after defendants made the foregoing motion, plaintiff moved to disqualify Fischbein, Olivieri, Rozenholc & Badillo from continuing as attorneys for codefendant Walentas. This motion was denied without prejudice to renewal at a later stage in the action. Plaintiff has appealed both of these orders.

This court has already held that the cause of action seeking damages for the intentional infliction of mental and emotional distress "is founded upon the allegedly baseless eviction proceedings and other actions brought against plaintiff over a period of several years. It is alleged that defendants' acts in serving notices and commencing legal proceedings against plaintiff were all without legal cause or justification and were intended solely to injure plaintiff in his occupancy as a tenant. Also alleged are the severe interruptions or discontinuance of services, the drastic deterioration of plaintiff's living conditions, the interference with his mail and the verbal abuse of plaintiff and his guests. They are sufficient to allege a cause of action against Walentas as landlord" *(supra,* at 350), and, as previously explained, also against the law firm. Thus, by contending that plaintiff could not prove that he had suffered emotional injuries but, even if he could, the supposed wrongful behavior does not involve tortious conduct, defendants are simply ignoring this court's prior ruling. Similarly, the Supreme Court's statement that the "claims of intentional tort and wrongful infliction of emotional harm are tenuous at best" is directly contrary to our holding that plaintiff's complaint contains adequate allegations to support such a cause of action.

As for the Supreme Court's finding that plaintiff has not demonstrated sufficient evidentiary facts to support his claim, the record of this case reveals clear evidence of defendants' purported intentional infliction of mental and emotional distress. Certainly, this is not a situation where plaintiff has merely made a generalized allegation of harassment; rather he has made a strong showing that defendants repeatedly instituted baseless lawsuits against him which he was required to defend to prevent his eviction and that defendants also perpetrated certain nonlitigation harassment, including interference with his mail delivery and diminution of apartment services. A trial is necessary to determine the purpose behind such litigation, i.e., whether Walentas and/or the law firm were engaged in a course of conduct designed to harass and evict plaintiff and other tenants who declined to purchase

their units and the extent of the respective defendants' liability. Indeed, the proof indicates that there may be considerable merit to plaintiff's assertion that defendants endeavored to attack his tenancy, and it was, therefore, error to grant the motion for partial summary judgment. As this court recently reiterated in *Double A Limousine Serv. v New York, N. Y. Limousine Serv.* (130 AD2d 403, 404), "[i]t is hornbook law that the 'function of summary judgment is issue finding, not issue determination' ".

It was also improper for the Supreme Court to allow defendants to amend their answer to raise the defense of Statute of Limitations under the circumstances existing herein. After the passage of so much time since this case was commenced, and following the enormous amount of activity which has occurred in connection with the instant matter, defendants now argue that they "were only alerted to the existence of the statute of limitations defense during the examination before trial of the plaintiff." In granting leave to amend, the court apparently accepted the claim "that the amendment is precipitated by the revelation of information to which only the opposing party was privy." Yet, it is astonishing that defendants would assert, and the court deem persuasive, that they only learned about the facts underlying this action so many years into the lawsuit, particularly where these facts consist of such knowledge that the litigation for which defendants were themselves responsible had preceded the present matter by more than one year. Since it is, in reality, difficult to discern anything here of which defendants have not been aware all along, any conceivable defense concerning the Statute of Limitations has long since been waived. Nor can it be found that plaintiff would not be prejudiced by defendants' belated introduction of a new defense after plaintiff has spent years of considerable time, effort and expense in prosecuting a lawsuit which could largely be rendered meaningless should the defense succeed *(see, Gleeson v Fairmont Manor Co.,* 38 AD2d 802).

Finally, whatever the potential for conflict between the respective interests of Walentas and the law firm inherent in their continued association as codefendants and attorney/client, the fact is that defendant law firm has never represented plaintiff nor owed it any sort of duty *(see, Rowley v Waterfront Airways,* 113 AD2d 926). There is also no claim by plaintiff that prosecution of his case will be damaged by the law firm remaining as Walentas' counsel. Thus, in the absence of a showing of prejudice to plaintiff himself, the Supreme Court

appropriately exercised its discretion in denying without prejudice for subsequent renewal the issue of whether defendant law firm should be allowed to act as both counsel for codefendant Walentas and a witness for itself *(see, Solomon v New York Prop. Ins. Underwriting Assn.,* 118 AD2d 695). Concur—Sandler, J. P., Carro, Milonas, Wallach and Smith, JJ.