OPINION OF THE COURT
Martin Shulman, J.
In this "right of redemption” proceeding commenced pursuant to RPAPL 761 and 767, respondents 684 Owners Corp. and New Deal Realty, LLP. (New Deal) move, inter alia, for an order as follows: (1) granting respondents summary judgment dismissing this proceeding with prejudice; (2) imposing sanctions and costs upon petitioner Davenport Trading Corp. (Davenport) and against Martin R. Fine, both as principal of and attorney for Davenport for frivolously commencing this proceeding; and (3) enjoining and restraining Davenport and Martin R. Fine from bringing any further proceedings or making any further motions against respondents without first obtaining the consent of this court. Davenport opposes the motion and cross-moves, inter alia, for an order imposing sanctions upon respondents, and granting leave to conduct discovery. Both the motion and cross motion are consolidated herein for disposition.
Background
This proceeding emanates from a prior summary holdover proceeding entitled 684 Owners Corp. v Scarab Equities Corp. (index No. L&T 94496/93 ([Prior Holdover Proceeding]). In the Prior Holdover Proceeding, 684 Owners Corp. sought possession of commercial space on the ground floor and basement located at 684 Broadway, New York, New York (subject premises). Scarab Equities Corp. (Scarab) entered into possession of the subject premises as a tenant pursuant to an assignment of a 99-year lease dated December 1, 1978 (Lease) between Twelve Lions Realty Co. (Twelve Lions), as landlord and 684 Owners Corp.’s (Owners Corp.) predecessor-in-interest, and 644 BRDY Realty, Inc. (644 BRDY) as tenant and Scarab’s predecessor-in-interest. 644 BRDY, Scarab and Davenport are controlled by Martin R. Fine.
When Scarab defaulted in the payment of rent, Owners Corp. served Scarab with a notice of default in June and July 1989 pursuant to section 15.1 of the Lease informing Scarab *423 that unless the default in rent was cured within 30 days the Lease would terminate 30 days after the notice was given. Instead of curing the default within 30 days, Scarab moved for a preliminary injunction (pursuant to First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630 [Yellowstone Injunction]) in the Supreme Court, County of New York, in 644 BRDY Realty v 684 Owners Corp. (index No. 117657/94) preventing Owners Corp. from removing it from possession of the subject premises. As a condition to granting this injunction, the court ordered Scarab to continue paying use and occupancy, without prejudice, to Owners Corp. When Scarab failed to make use and occupancy payments, the Hon. Walter M. Schackman, J.S.C., by decision dated November 16, 1992, vacated the Yellowstone Injunction. Scarab failed to cure its default within the 30-day period and the Lease automatically terminated by operation of law on or about November 16, 1992.
Based upon the termination of this Lease, the Civil Court in the Prior Holdover Proceeding granted Owners Corp. a judgment of possession, dated June 8, 1994. The warrant of eviction was issued forthwith and was executed on Scarab on August 8, 1994.
Thereafter, 644 BRDY commenced an action entitled 644 BRDY Realty v Fiorito, in the Supreme Court, County of New York (index No. 120704/94), for wrongful eviction. By decision and order dated October 31, 1994, the Hon. Walter M. Schackman, J.S.C., dismissed the complaint and sanctioned Martin R. Fine $5,000 for commencing a frivolous action. Justice Schackman stated in his decision/order that "The basic issue, the claimed tenancy of 644 BRDY Realty Corp., has already been litigated. My decision, dated August 2, 1994 (644 BRDY Realty Corp. v. 684 Owners Corp., Index No. 11765/94) held that BRDY Realty Corp. is not a tenant, and the only recourse is an appeal.”
644 BRDY appealed this and each of Justice Schackman’s prior decisions and orders to the Appellate Division, First Department.
The Appéllate Division unanimously affirmed all of Justice Schackman’s decisions and orders, stating: "Following more than five years of litigation, it was finally determined that defendant 684 Owners Corp. was entitled to possession of the ground floor commercial space from the tenant, Scarab Equities Corp., as well as a money judgment for rent arrears. Scarab Equities Corp. is an entity controlled entirely by Martin Fine, Esq. who also controls the plaintiffs in these actions. Mr. Fine’s *424 attempt to revive the tenancy through the plaintiff entities and to seek damages for wrongful eviction was properly summarily dismissed by the IAS Court inasmuch as the court had before it the entire prior history of this landlord-tenant dispute which clearly demonstrated that plaintiffs [644 BRDY and Davenport] have no bona fide claim as tenant or sub-tenant. Accordingly we agree that Mr. Fine was properly sanctioned for this frivolous litigation.” (644 BRDY Realty v 684 Owners Corp., 216 AD2d 43, 44.)
With this backdrop, Martin R. Fine, president of both 644 BRDY and Scarab, executed an assignment dated July 17, 1995, wherein 644 BRDY and Scarab assigned its collective interest to Davenport, another Martin R. Fine controlled entity.
Interestingly, prior to this assignment, 644 BRDY entered into a sublease agreement, dated February 1, 1994, with respondent Au Bon Pain, Inc. (ABP) to sublet the subject premises for approximately $175, 000 per year. ABP alleges that "[Martin] Fine delivered what he represented to be a duly executed estoppel letter and, in reliance thereon, ABP executed the purported sublease for the premises and paid $175,000 to Fine’s company, allegedly in prepayment of the first year’s rents * * * However, we learned that neither Fine nor any of his companies had any ownership interest in the premises and that the signature on the estoppel letter was a phony.”
Then, ABP negotiated a second sublease agreement dated November 22, 1994, for the subject premises with the net lessee and respondent New Deal, who had the authority to enter into the sublease. ABP made another payment of $175,000 to New Deal, renovated the subject premises and is now operating a restaurant and bakery business on the subject premises.
Now, Davenport seeks an order pursuant to RPAPL 761 and 767 redeeming the lease and awarding Davenport possession of the subject premises.
Right of Redemption
The primary issue to be decided herein is whether the right of redemption provision in RPAPL 761 applies only to nonpayment proceedings and not to holdover proceedings where the Lease was already terminated.
On a motion for summary judgment, the movant has the initial burden of proving entitlement to judgment. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].) The control *425 ling point is issue finding, not issue determination. (Double A Limousine Serv. v New York, N. Y. Limousine Serv., 130 AD2d 403 [1st Dept 1987].) The opponent of a properly made summary judgment motion must present evidentiary facts sufficient to raise a triable issue of fact. (Freedman v Chemical Constr. Corp., 43 NY2d 260 [1977].)
History
Historically, the Legislature has been vigilant in protecting a tenant from losing his/her valuable interest in a leasehold that exceeds a term of five years for the nonpayment of rent. Rasch’s treatise (3 Rasch, New York Landlord and Tenant— Summary Proceedings § 48:1, at 257-258 [3d ed]) has an interesting discussion on this subject: "Under one of the early summary proceeding statutes, a summary proceeding could not be maintained for non-payment of rent when the unexpired part of the demised term exceeded five years. However, this statute was repealed shortly after its enactment, and in lieu thereof the legislature granted a right of redemption to a tenant dispossessed for non-payment of rent when the unexpired term of his lease at the time of the issuance of the warrant exceeded five years. This right of redemption, with slight changes, still exists and now is part of the Article on summary proceedings in the Real Property Actions and Proceedings Law [RPAPL 761 et seq.l”
RPAPL 761
RPAPL 761 states, in relevant part, that: "Where the special proceeding is founded upon an allegation that a lessee holds over after a default in the payment of rent, and the unexpired term of the lease under which the premises are held exceeds five years at the time when the warrant is issued the lessee, his executor, administrator or assignee, at any time within one year after the execution of the warrant * * * may pay or tender to the petitioner, his heir, executor, administrator or assignee * * * all rent in arrears at the time of the payment or tender with interest thereupon and the costs and charges incurred by the petitioner.”
This statute granting a right of redemption would apply when the following four elements are met: (1) Nonpayment Proceeding — tenant (lessee) has been dispossessed for nonpayment of rent in a summary proceeding; (2) Unexpired Lease — at least five years remain under an "unexpired” lease at the time when the warrant is issued; (3) Standing — an individual or *426 entity with standing (lessee, executor, administrator or assignee) must within one year after the execution of the warrant seek redemption; and (4) Payment of Rental Arrears — pay to petitioner, his heir, executor, administrator or assignee "all rent in arrears at the time of the payment or tender with interest thereupon and the costs and charges incurred by the petitioner.” (RPAPL 761 [emphasis added].) In this case, Davenport alleges that Scarab was dispossessed in the Prior Holdover Proceeding on the ground that Scarab failed to pay rent (element 1) under an unexpired lease that exceeded five years at the time the warrant issued (element 2). Davenport further alleges that it has standing to maintain this proceeding because it is the assignee of the previous tenants, 644 BRDY and Scarab (element 3), and the previous tenants of the subject premises and their "subtenant”, Au Bon Pain, Inc., paid all rental arrears to Owners Corp. and New Deal (element 4).
Nonpayment (Element 1)
Notwithstanding extensive research by this court, and apparently by counsel, this court could not locate a single case that discussed the applicability of RPAPL 761 in the context of a prior holdover proceeding. In fact, all the cases discovered were quite old and dealt with the right of redemption in the context of a summary nonpayment proceeding. (See, Bien v Bixby, 18 Misc 415 [App Term 1896], affd following remand 22 Misc 126; Peabody v Long Acre Sq. Bldg. Co., 188 NY 103 [1907]; Terwilliger v Browning, King & Co., 222 NY 47 [1917]; D.A. Schulte, Inc. v Loft, Inc., 271 NY 420, rearg denied 272 NY 535 [1936].) The primary reason for the dearth of case law on this subject is due to the insertion of a waiver of the right of redemption in today’s standard form leases.
However, Rasch (3 Rasch, New York Landlord and Tenant — Summary Proceedings §§ 48:5, 48:6, 259-260 [3d ed]) and Corpus Juris Secundum (52A CJS, Landlord & Tenant, § 789, at 219 [1968]) suggest that the statutory right of redemption is available where a judgment of possession and warrant was issued ’’’’based on nonpayment of rent” (emphasis supplied). A fair reading of RPAPL 761 would therefore require a finding that the right of redemption is limited to a situation where the judgment of possession was based upon nonpayment of rent.
In the case at bar, the Prior Holdover Proceeding was commenced by Owners Corp. to obtain possession of the subject premises, and not to collect unpaid rent arrears. The basis for the Prior Holdover Proceeding was Scarab’s failure to cure a *427 substantial violation (i.e., default in the payment of rent) of the Lease within the time proscribed by the Lease. Instead of curing the default, Scarab moved for a Yellowstone Injunction, which was denied by Justice Schackman because Scarab failed to make use and occupancy payments as the court directed. Scarab failed to cure the default within the prescribed time and the Lease terminated by operation of law. As a result, the court granted Owners Corp. a judgment of possession, and Scarab was legally dispossessed from the subject premises.
Lease (Element 2)
Assuming, arguendo, that element 1 had been met, Davenport has no right of redemption under RPAPL 761 because the Lease terminated by operation of law prior to the issuance of the warrant of eviction.
This court is bound by the prior rulings of the Civil Court, Supreme Court and Appellate Division that have collectively held that Scarab failed to cure its default in the payment of rent under the Lease, and the Lease necessarily terminated as a result of Scarab’s failure to cure the default.
Standing (Element 3)
Assuming, arguendo, that the prior two elements had been met, Davenport still does not have standing to redeem the Lease. The assignment of 644 BRDY and Scarab’s interest in the Lease to Davenport did not have any legal significance because the Lease had been terminated by operation of law prior to this assignment. In other words, 644 BRDY and Scarab had no interest in the Lease which it could transfer to Davenport.
Payment (Element 4)
In addition, assuming, arguendo, that Davenport has standing, all rent arrears and any accruing interest have not been paid to Owners Corp., New Deal or tendered to this court. Davenport relies upon certain payments that it alleges that ABP made to New Deal, the net lessee and alleged "alter ego” of Owners Corp., pursuant to a sublease agreement between 644 BRDY and ABP. This argument fails for three reasons. First, ABP states that the payments went directly to 644 BRDY, a Martin Fine controlled company and not to Owners Corp. as the statute requires. Second, Justice Schackman previously held (in two separate decisions mentioned earlier that were later affirmed by the Appellate Division) that 644 BRDY *428 was not a tenant of the subject premises. Therefore, this sublease agreement between 644 BRDY and ABP could not be binding upon Owners Corp. However, the later sublease agreement, dated November 22, 1994, between ABP and New Deal, the master tenant of premises, would be binding upon Owners Corp. if ABP was a subtenant of 644 BRDY. Since the "law of the case” is to the contrary, all payments by ABP to 644 BRDY for rent arrears cannot be credited to Davenport. Finally, assuming that the payments by ABP can be credited, nonetheless, Davenport admits the interest on said rent arrears may not have been paid, to wit: "To the extent there is any nominal interests or amounts due for rent, that sum will be paid as set forth in the judgment to be entered in this Special Proceeding”.
Based upon the foregoing, this court grants the branch of respondents’ motion seeking summary judgment dismissing the petition, with prejudice.
Sanctions
Since Davenport and its counsel, Martin Fine, could not locate any decisional law that expressly rejects the argument that the RPAPL 761 right of redemption is not applicable in a holdover proceeding based upon a substantial violation of a lease, this court chooses not to sanction Davenport or its counsel. However, any further motion practice, such as one for reargument or renewal, and further proceedings intending to revive the tenancy or redeem Davenport’s terminated Lease, excluding appeal of this decision and order, shall not be countenanced and will result in sanctions at that time.
Accordingly, this court denies the remaining branch of respondents’ motion.
Cross Motion
Davenport’s cross motion is denied as moot because this court has dismissed the underlying proceeding with prejudice.