ADAMS & Co. REAL ESTATE, INC., Respondent, v. E. & B. SUPER MARKETS, INC., Appellant.

First Department, November 17, 1966.

*Daniel H. Greenberg* of counsel (*Marvin Margolis,* attorney), for appellant.

*Solomon Weinstein* of counsel (*Leight, Drimmer & Weinstein,* attorneys), for respondent.

*Per Curiam.* This appeal, by leave of the Appellate Division, is from an order of the Appellate Term which affirmed, without opinion, a judgment of the Civil Court entered March 31, 1965, in favor of plaintiff in the sum of $7,989.10.

Plaintiff brought this action to recover brokerage commissions from the purchaser in the alleged sale of a leasehold to premises and fixtures.

Plaintiff's complaint, in a single cause of action, alleges an express agreement with defendant whereby defendant promised to pay plaintiff a full brokerage commission if plaintiff would introduce defendant's vice-president, Mr. Bertel, to a Mr. Witt, real estate manager of Safeway Stores, Incorporated (Safeway) and if such introduction resulted in defendant's acquiring possession of a certain store (leased to Safeway) together with the fixtures and equipment therein. Plaintiff alleges performance, demand and a refusal to pay. In a single paragraph plaintiff alleged the reasonable value of its services to be identical in amount and calculated similarly as the brokerage commission.

Plaintiff failed to prove agreement as to the rate or amount of compensation and the trial court dismissed the cause of action on express contract. Over objection the court submitted the case to the jury on the theory of *quantum meruit*. It is from a judgment in favor of plaintiff that this appeal is taken.

While employment as a broker may be implied where an owner of property accepts voluntary services of a broker rendered with an expectation of payment, and the owner is aware of such expectation (see *Hevia* v. *Wheelock,* 155 App. Div. 387), that is not the case before us. Plaintiff sued on an express contract and there was a total failure of proof that its introduction resulted in the sublease which plaintiff testified it was employed to obtain. The eventual deal made by defendant involved an assignment of the lease and a purchase of the fixtures on terms entirely different from those transmitted by plaintiff from Safeway to defendant. Plaintiff recognized it is not customary for a buyer or lessee to pay commissions, commissions usually being paid by the owner or lessor, but claims defendant orally agreed to do so. And this despite the fact that plaintiff testified he informed defendant the property was listed with plaintiff.

The court, in submitting the case on *quantum meruit,* failed to instruct the jury as to the nature of an implied contract, or even how to determine the proper measure of damages if such a contract were found to exist. This alone would warrant reversal. However, there is more to be considered here.

There are two classes of implied contracts, those implied in fact as a result of the acts of the parties, generally referred to as true contracts, and quasi or constructive contracts resting upon equitable principles. "A contract cannot be implied *in fact* where the facts are inconsistent with its existence; or against

the declaration of the party to be charged; or where there is an express contract covering the subject matter involved; or against the intention or understanding of the parties '' (*Miller* v. *Schloss*, 218 N. Y. 400, 406–407; *Hohenberg Co.* v. *Iwai N. Y.*, 6 A D 2d 575; 6 N. Y. Jur., Brokers, § 85). Nor would the theory of quasi-contract apply here for there is no unjust enrichment or similar advantage accruing to defendant which would move the court to act for plaintiff's benefit or protection. Even on the theory as submitted there was a lack of proof as to reasonable value of the alleged services rendered.

The claim of plaintiff, that defendant with knowledge of the fact that the property was listed with plaintiff agreed to pay full commissions, comes perilously close to, but does not reach, the situation where one agrees to assume the debt or obligation of another. Certainly no consideration is shown for the assumption of any such obligation. The alleged agreement to pay full commissions must be construed to mean '' if such commissions were payable.'' That is, if the result flowed from the efforts of the broker. There is no proof that the eventual result, i.e., assignment of lease and purchase of fixtures, was in any way connected with plaintiff's efforts (cf. *Newberry & Co.* v. *Warnecke & Co.*, 267 App. Div. 418), in fact the evidence is to the contrary. When plaintiff was unable to procure the premises for sublease it suggested defendant purchase the building. This suggestion was rejected, and plaintiff then sought, unsuccessfully, to obtain a purchaser for the building with a view to obtaining a 21-year lease therein for defendant at $20,000 per year. Some months later a third party again brought the property to defendant's attention and thereafter an arrangement was made through such party which was completely different from that discussed with plaintiff. There is no evidence of bad faith by defendant, and certainly under the circumstances present it had every right to deal through such third party. Plaintiff has not shown it earned any compensation (cf. *Bereswill* v. *Yablon*, 6 N Y 2d 301, 306).

The order and judgment appealed from should be reversed on the law and the complaint dismissed, with costs and disbursements to appellant.

BREITEL, J. P., McNALLY, STEVENS and STEUER, JJ., concur.

Determination of the Appellate Term and the judgment of the Civil Court of the City of New York unanimously reversed, on the law, with $50 costs and disbursements to appellant, and the complaint dismissed.