42 F.3d 773
 NEW SPECTRUM REALTY SERVICES, INC., Plaintiff-Appellee,
v.
The NATURE COMPANY, Defendant-Appellee,
v.
644 BRDY REALTY, INC., Appellant.
NEW SPECTRUM REALTY SERVICES, INC., Plaintiff-Appellee-Cross-Appellant,
v.
The NATURE COMPANY, Defendant-Appellant-Cross-Appellee.
 Nos. 237, 238, 852, Dockets 94-7162, 94-7194(L), 94-7214XAP.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 19, 1994.
Decided Dec. 20, 1994.
 
 Henry J. Bergman, New York City (Bachner, Tally, Polevoy & Misher, New York City, of counsel), for New Spectrum Realty Services, Inc.
 John J. O'Connell, New York City (Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City, David A. Proshan; Mitchel B. Craner, New York City, of counsel), for The Nature Co.
 Martin R. Fine, New York City, for 644 BRDY Realty, Inc.
 Before: LUMBARD, ALTIMARI, and CABRANES, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Nature Company appeals from a judgment of the Southern District of New York (Stanton, J.) entered on February 1, 1994, following a bench trial, awarding damages of $150,500 to New Spectrum Realty Services, Inc. ("New Spectrum"). On appeal, Nature Company argues that the court gave improper effect to a condition precedent of its liability to New Spectrum for a brokerage fee. On cross-appeal, New Spectrum argues that the court wrongly denied its demand for punitive damages. In addition, 644 BRDY Realty, Inc. ("BRDY Realty") appeals from the court's denial of a motion to intervene made after the close of evidence. These appeals were consolidated for oral argument. We affirm.
 
 
 2
 In October 1991, New Spectrum, a New York real estate broker, contacted Nature Company, a California-based retail chain, regarding commercial rental properties in lower Manhattan. Nature Company expressed interest in 565 Broadway, a rental property owned by BRDY Realty.
 
 
 3
 New Spectrum was then engaged in two other lawsuits against BRDY Realty's principal, Martin Fine, for payment of brokerage fees. Consequently, New Spectrum stated at the outset that it would pursue a lease at this location only if Nature Company assumed responsibility for its fee. Nature Company agreed to pay the fee, on condition that New Spectrum secure an offset in rent credits from Fine such that Nature Company incur no "out of pocket" expense in paying the fee. In particular, Nature Company requested either that Fine apply its prepaid rent directly toward New Spectrum's fee, or that Nature Company simultaneously receive a guaranteed rent credit with its payment of the fee.
 
 
 4
 New Spectrum submitted a lease proposal to Fine on Nature Company's behalf in January 1992, without result. In November, Nature Company renewed its interest. New Spectrum obtained information requested by Nature Company and, after a conference call among all three parties, resubmitted a lease proposal to Fine. The lease provided for annual rent of $260,000, to increase by 12% every three years, and stated that the brokerage commission was "[p]ayable by The Nature Company though offset by landlord against tenant[']s base rent." Thereafter, New Spectrum reiterated to Nature Company that if a lease were consummated, it would look to Nature Company for its fee, adding: "Our position has been quite clear that we will not be receiving our commission from Martin Fine, regardless what he says to the contrary." New Spectrum also rejected a draft agreement submitted by Nature Company to Fine that called for a brokerage fee of only $60,000.
 
 
 5
 On January 6, 1993, Nature Company signed a fifteen year lease with Fine that provided for annual rent of $260,000, to increase by 12% every three years. Fine, however, did not agree to apply Nature Company's prepaid rent to New Spectrum's fee or otherwise offset Nature Company's payment of the fee with simultaneous rent credits. Instead, under a provision negotiated by Nature Company's counsel, Fine agreed "to be solely responsible for the payment of any [brokerage] fees" and "to defend, indemnify and hold harmless" Nature Company as to such fees. Nature Company reserved the right to pay such fees out of its own pocket and, should Fine fail to provide timely reimbursement, to withhold a corresponding amount of rent:
 
 
 6
 [A]ny and all claims, fees, charges, judgments and commissions paid by Tenant plus interest as hereinafter provided for shall be promptly paid to Tenant by Landlord.... If Landlord fails to make any such payments within five (5) days of written demand therefor by Tenant, Tenant shall have the right to offset such amounts against any and all rent and additional rent due and payable pursuant to the terms of this Lease.
 
 
 7
 The parties agreed to a rate of 12% interest for any expenditures that Nature Company made.
 
 
 8
 On January 12, New Spectrum requested Nature Company to pay its brokerage fee, submitting the following schedule:
 
 
 9
 6% of the 1st year's rent;
 
 
 10
 5% of the 2nd year's rent;
 
 
 11
 4% of the 3rd through 5th year's rent;
 
 
 12
 3% of the 6th through 10th year's rent;
 
 
 13
 2% of the 11th through 20th year's rent; and
 
 
 14
 1% of rent for the 21st year and beyond.
 
 
 15
 The fee under this schedule amounts to roughly $150,500. Nature Company has not paid this fee, giving rise to the present litigation.
 
 
 16
 New Spectrum filed a complaint against Nature Company in the Southern District in February 1993. Nature Company immediately informed Fine, who recommended an attorney. During the next several months, while four depositions were taken and a pre-trial order was filed, Fine made no attempt to intervene. A one day trial was held on December 16, 1993.
 
 
 17
 On January 4, 1994, Fine filed a motion to intervene under Fed.R.Civ.P. 24(a)(2), on the following grounds: (1) Fine suffered heart attacks in the summer of 1993, had open heart surgery in November, and was recuperating during December, when trial occurred; (2) Nature Company failed to call Fine as a witness, contrary to his expectations; (3) at most, New Spectrum was entitled to $60,000, not $150,500; and (4) Fine had not recognized a need to intervene until he read the trial transcript, which revealed that contrary to its assurances, Nature Company had failed to conduct an adequate defense. The court denied the motion, finding that although Fine satisfied the general requirements for intervention, the motion was untimely.
 
 
 18
 The court then heard the parties' closing arguments. New Spectrum argued that the rent withholding remedy in the lease satisfied its agreement with Nature Company, and that in any event it had earned its fee by procuring a lease on Nature Company's behalf. Nature Company argued that the rent withholding remedy differed materially from what it sought of New Spectrum: Nature Company had agreed to pay New Spectrum's fee only if it could avoid going "out of pocket," either by diverting the prepaid rent from Fine to New Spectrum or otherwise receiving simultaneous rent credits; in contrast, the lease terms provided a measure of recovery against Fine only after Nature Company went out of pocket, a measure whose enforcement might require litigation with Fine.
 
 
 19
 The district court found that the parties had expressly conditioned Nature Company's payment of the fee on its obtaining offsetting rent credits from Fine. The court also found no evidence that Nature Company had expressly agreed to pay New Spectrum's fee "even without offsetting credits." The court then addressed the question of "whether the lease as obtained ... produced the substantial equivalent or the exact equivalent of the tenant's needs, that is to say, a recoupment by rent credits of its payment of the real estate commission in the first instance." The court concluded that the indemnification clause, with its accompanying rent offset provision, was "a sufficient compliance with the duties of the real estate broker to entitle that broker to a commission." The court entered judgment for New Spectrum for $150,500, but denied the request for punitive damages.
 
 
 20
 Nature Company disputes the district court's finding that the indemnification clause, which Nature Company obtained through the efforts of its own counsel, is a "sufficient compliance" with New Spectrum's duties. It argues that its bargain was that "it would not run the risk of being out so much as one dollar" in paying the fee. New Spectrum did not deliver such a bargain. Nor do the lease terms guarantee such a result, because the indemnification clause and rental offset option take effect only after Nature Company makes an initial out of pocket expenditure. Nature Company further argues that the court's ruling involves circular reasoning: Nature Company is liable to New Spectrum because it obtained an indemnity clause to protect itself against liability to New Spectrum.
 
 
 21
 Although we do not agree with the district court's conclusion that New Spectrum has substantially complied with its contractual duties, we find that New Spectrum is entitled to recovery. A broker earns his commission when "a sale is effected through his agency as the procuring cause." Salzano v. Pellillo, 4 A.D.2d 789, 790, 165 N.Y.S.2d 550, 553 (2d Dep't 1957). New Spectrum plainly satisfied this test: the material terms of the lease reflect the location, duration, and rent that New Spectrum initially communicated to Fine on Nature Company's behalf. At issue is simply whether, having earned its fee, New Spectrum may look to Nature Company, rather than Fine, for payment.
 
 
 22
 Nature Company and New Spectrum expressly agreed that if New Spectrum obtained the rental offset sought by Nature Company, Nature Company would pay New Spectrum's fee. By the same token, both parties understood that such a provision "was a condition of the deal" with Fine, so that if New Spectrum failed to obtain such a provision, Nature Company could break off lease negotiations without obligation to New Spectrum. However, the parties made no provision for a third contingency, namely, Nature Company's obligation to New Spectrum in the event that Nature Company entered a lease with Fine notwithstanding New Spectrum's failure to obtain the requested rental offset provision.
 
 
 23
 When no agreement, express or implied, governs the parties' behavior, a plaintiff may recover in quasi-contract against a defendant who "received a benefit from the plaintiff's services under circumstances which, in justice, preclude him from denying an obligation to pay for them." Bradkin v. Leverton, 26 N.Y.2d 192, 197, 309 N.Y.S.2d 192, 196, 257 N.E.2d 643, 645 (1970). Here, New Spectrum provided Nature Company, at the latter's behest, the customary services of a broker, by supplying listings, obtaining relevant information, mediating between tenant and landlord, and procuring a lease. Nature Company cannot fairly deny an obligation to pay, given that New Spectrum stated at the outset that it would look to Nature Company for its fee for these services.
 
 
 24
 We recognize that under industry practice the lessor customarily pays any commission due. See Adams & Co. Real Estate, Inc. v. E. & B. Super Markets, Inc., 26 A.D.2d 365, 366, 274 N.Y.S.2d 776, 777 (1st Dep't 1966). Nonetheless, a broker may recover against a lessee in quasi-contract where the record demonstrates "unjust enrichment or similar advantage accruing to defendant which would move the court to act for plaintiff's benefit or protection." Adams, 26 A.D.2d at 367, 274 N.Y.S.2d at 778. The particular facts of this case fully warrant New Spectrum's recovery against Nature Company on this basis.
 
 
 25
 This brings us to the question of damages. The joint appendix submitted by the parties contains a pre-trial consent order, signed by Nature Company, stating the following as an "agreed finding of fact": "Brokerage commission under the claimed contract is $150,500. The fair and reasonable value of the claimed work, labor and services which resulted in the lease being signed is $150,500." Although the court did not sign or file this order, both the court and the parties apparently relied on it: at trial the court stated that damages of $150,500 was a stipulated figure, without objection from Nature Company; similarly, Nature Company's appeal addresses only the question of liability, not damages. On this basis, we find judgment in the amount of $150,500 proper as the stipulated reasonable value of New Spectrum's services.
 
 
 26
 New Spectrum also seeks punitive damages under Aero Garage Corp. v. Hirschfeld, 185 A.D.2d 775, 586 N.Y.S.2d 611 (1st Dep't), lv. to appeal denied, 81 N.Y.2d 701, 594 N.Y.S.2d 715, 610 N.E.2d 388 (1992). Aero, however, awarded punitive damages based on a landlord's willful frustration of his tenant's rights under an unambiguous contract. Here, because Nature Company had a colorable argument that New Spectrum did not satisfy a condition precedent to payment, the court properly denied punitive damages.
 
 
 27
 Finally, in denying Fine's motion to intervene, which was not made until after the close of evidence, the district court found that Fine had ample notice of the underlying suit and of the possibility that Nature Company's interests might diverge from his own. We find no abuse of discretion. See Farmland Dairies v. Commissioner of New York State Department of Agriculture, 847 F.2d 1038, 1043-45 (2d Cir.1988).
 
 
 28
 Affirmed.